The People ex rel. Edward S. Stokes, Appellant, *v.* The Warden of the State Prison at Sing Sing, Respondent.

In legal view, punishment for a crime does not begin until after the criminal has been convicted and sentenced; any imprisonment prior to sentence will not enure to his benefit as part of the punishment.

As to whether it is within the province of the courts to award to a prisoner in a State prison the time to which he is entitled for good conduct, *quære.*

A court, in imposing sentence, may take into consideration the time the convict has been in custody awaiting trial, but it is matter of discretion only.

On the sixth of January, 1873, the relator was convicted of murder and sentenced to be hanged. On writ of error, proceedings were stayed, the judgment was reversed, and a *venire de novo* ordered. He was again tried October 29, 1873, having meanwhile been confined in jail; he was convicted on the second trial of manslaughter in the third degree, and sentenced to imprisonment in State prison at hard labor for four years, the maximum punishment for that crime; he was put into a State prison November 1, 1873  On February 5, 1875, he was brought out on writ of *habeas corpus*, and claimed that the time of imprisonment between the first and the second trials should be taken as part of his sentence; that this, with the time served in State prison, and the

abatement earned by good conduct, in accordance with statutes (chap. 417, Laws of 1863; chap. 415, Laws of 1863; chap. 321, Laws of 1864; chap. 451, Laws of 1874), made up the full term of imprisonment. *Held,* that the claim was untenable; and that the relator was properly remanded.

(Argued May 26, 1876; decided June 6, 1876.)

Appeal from order of the General Term of the Supreme Court in the second judicial department dismissing a writ of *certiorari* brought to review the decision of a justice of said court, which dismissed a writ of *habeas corpus* issued upon petition of relator and remanded him to the custody of the warden of the State prison at Sing Sing.

The facts appear sufficiently in the opinion.

*Charles W. Brooke* for the appellant.

*Benj. K. Phelps* for the respondent. The question of the allowance of time for good behavior is one for the determination of the executive and not for the courts. (Laws 1862, chap. 417, p. 748; 5 Edms. Stat., 204; Laws 1863, chap. 415, p. 708; 6 Edms. Stat., 148; Laws 1864, chap. 321, p. 763; 6 Edms. Stat., 255; Laws 1874, chap. 451, p 594, § 12.)

Folger, J. Before the 6th day of January, 1873, the relator had been indicted and put on trial for the killing of James Fisk, Jr. On that day he was, on the verdict of a jury, adjudged guilty of murder and sentenced to be hung on the twenty-eighth day of February, then next. The sentence was not executed. The relator had brought his writ of error, and proceedings had been stayed. The judgment was reversed by this court, on the 10th of June, 1873, and a *venire de novo* ordered. On the 29th October, 1873, the relator was again put upon trial under the same indictment, and was, on the verdict of a jury, adjudged guilty of manslaughter in the third degree. In the meantime, he had lain in jail, in New York county. He was, on that day, sentenced to be imprisoned in the State prison at hard labor, for the

term of four years. This term of imprisonment is the *maximum* punishment for that crime. He was actually for the first time put into a State prison at Sing Sing, on the 1st day of November, 1873, and has been kept there ever since, it is to be assumed, at hard labor. On the 14th January, 1875, the agent and warden of that prison made a certificate dated that day, that the relator had faithfully performed such work and labor as had been assigned to him, and that his conduct from the 1st November, 1873, to the date of the certificate had been good, and in adherence and obedience to the prison officials and discipline. On the 5th February, 1876, he was brought out of the prison by writ of *habeas corpus*, and claimed to be discharged from imprisonment and set at liberty. This was denied and he was remanded.

The sole claim for his discharge is, that he has suffered imprisonment in accordance with the sentence passed upon him, for the full term of it, so far as in law it is now capable of infliction.

It is at once apparent, that from 29th October, 1873, to 5th February, 1876, is not a term of four years. So, it is plain, that the relator has not been in a State prison at hard labor for that length of time, and has not thus satisfied the sentence. But the relator claims that the time from the 6th of January, 1873, to 29th of October, 1873, during which he was kept in the New York county jail, is to be taken as part of the four years of his sentence; and he further claims, that he has in accordance with certain statutes (see laws of 1862, chap. 417; Laws of 1863, chap. 415; Laws of 1864, chap. 321; Laws of 1874, chap. 451, p. 598, § 12), earned by good conduct in State prison, an abatement from the term of his sentence. It is conceded, that these two, together with the time for which he has been actually kept in the State prison, will equal four years. Still we cannot yield to this claim of the relator. His counsel is obliged to admit that the conviction for manslaughter was legal, that the court of Oyer and Terminer had thereupon the power to impose upon him a sentence of imprisonment in the State prison, at

hard labor, for four years. The conviction being legal and the sentence in accordance with law, it follows that the State may exact from him the full endurance of the sentence and of every part of it. He may not be relieved until he has shown full endurance, or executive pardon, or what is tantamount thereto. Nor may he claim relief as matter of right, until, according to the letter of it, he has shown full endurance.

Punishment for the commission of crime is that pain, penalty or forfeiture which the law exacts, and the criminal pays or suffers for the offence. In legal view, it cannot be said to have been exacted, nor to have been endured or begun to be endured, until the commission of the particular crime has been legally determined, and the particular criminal legally ascertained; nor until the due sentence, that is, the judicial fixing and utterance, of the definite kind, amount, or period of punishment has been authoritatively, and in due form of law and proceeding, pronounced upon him for his crime, after his conviction therefor. Punishment is a consequence of crime, to be sure, but in a legal view, it is the immediate consequence of only a conviction of crime. Hence, any pain or penalty which the offender has suffered before conviction and before sentence has been pronounced upon him is illegal, or is due to some demand of the law other than that based upon his conviction. In either case, it fails to enure to his benefit as part of that due punishment which the law exacts, by reason of his conviction and of the sentence passed upon him.

Again, as a general rule, from which this case is not an exception, no pain or deprivation which a person suffers in accordance with law, can be made, as of his right, to answer at once two distinct and different requirements of the law. The imprisonment of the relator in the county jail was by virtue of one requirement of law, to wit: that persons indicted for murder may be kept in close custody until their trial therefor is ended. It was for that reason a lawful imprisonment. It could have been, for that reason, justified by the

keeper of the county jail. It was a satisfaction, then, of that specific legal exaction, quite another exaction than that by virtue of this sentence, and it was a satisfaction of that other legal exaction only ; when, after that, arose the legal exaction by virtue of the sentence upon this conviction, the imprisonment which the relator had undergone in answer to that other requirement, had been applied and spent in satisfying it, and may not be now applied in satisfaction of this later demand of the law. The learned counsel for the relator admitted, upon the argument, that the imprisonment in the county jail was legal, and that the relator could not have obtained a discharge therefrom. That period of imprisonment was then, appropriated and consumed by some demand of the law, other than the conviction of October 29, 1873, and the sentence thereupon, and does not now exist, so as to be applied in satisfaction of the latter. Moreover, important parts of the sentence are the place of imprisonment, to wit: in a State prison, and the manner of detention there, to wit : at hard labor. When the relator lay in the county jail, he was not enduring these parts of the sentence ; he was not in State prison ; he was not at labor. How then can the time he lay in the county jail be reckoned a part of the time for which the law adjudged him to be at labor in the State prison ? Doubtless, a court when imposing sentence of imprisonment may consider in mitigation of the severity of it, the time for which the convict has been in custody while awaiting trial. And this is the only force of the instances brought forward by the learned counsel. It is matter of discretion only, and the discretion is exercised upon that fact, the same as upon any of the circumstances of the case which may be urged upon the court for mitigation of punishment.

If the time during which the relator was confined in the county jail is not allowed to him, the time which should be awarded to him for good conduct in State prison will not now avail to procure his discharge. Hence, it is not needful that we consider at length, whether the awarding thereof is within the province of the courts. It will suffice here to say,

that the learned counsel for the relator has failed to convince us that the courts may interfere to make that award. There may be question whether it is not a matter for the executive alone.

The order of the General Term should be affirmed.

All concur.

Order affirmed.