## SUPREME COURT.

The People of the State of New York, appellants, agt. Ada Lincoln, respondent.

*Criminal law — Term of imprisonment — from what time sentence begins to run.*

On convictions for misdemeanor the sentence begins to run from the day it is pronounced, and the time the prisoner is detained in the county jail is to be credited upon the sentence. (*This seems to be adverse to People ex rel. King agt. McEwen, ante,* 226.)

*Fourth Department, General Term, October,* 1881.

*Before* Smith, *P. J.,* Haight *and* Hardin, *JJ.*

*E. B. Fenner,* district-attorney, for appellants.

*A. McDonald,* for respondent.

Hardin, *J.* — This is an appeal from an order made by the special county judge of Monroe county discharging the respondent from the Monroe county penitentiary, where she was imprisoned upon a commitment issued by the recorder of the city of Elmira.

On the 13th day of April, 1880, the respondent was convicted before said recorder of being a disorderly person, and sentenced to be imprisoned six months in the Monroe county penitentiary. Thereupon she was confined in the county jail until about the 1st of June, 1880, when having sued out a *certiorari* to review the proceedings she was let to bail, and remained out upon bail until the 28th day of August, 1880, when she was surrendered by her bail to the custody of the keeper of the jail of Chemung county, and there detained by him until the 28th day of September, 1880, when she was removed to the custody of the keeper or superintendent of the

Monroe county penitentiary, and remained until the 28th day
of December, 1880, when she was discharged by the special
county judge of Monroe county, and from his order the peo-
ple have taken this appeal (*Code of Civil Procedure, sections*
2008, 2009).

The conviction of the respondent, and sentence for six
months, could not be upheld under the Revised Statutes.

They provided that in case it appear that the accused is a
disorderly person. The justice may require of the offender
sufficient sureties for his or her good behavior for the space of
one year. In default of such sureties being found the justice
shall make up, sign and file in the county clerk's office a record
of the *conviction* of such offender as a disorderly person,
*   *   *   and shall, by warrant under his hand, commit such
offender to the common jail of the city or county, there to
remain until such sureties be found or such offender be dis-
charged according to law (2 *R. S.,* 893, *sec.* 1, *chap.* 20, *part*
1). Under the Revised Statutes the sentence imposed was
not authorized.

But the charter of Elmira, passed in 1875 (*chap.* 370) con-
tains a section conferring upon the recorder jurisdiction,
exclusive of justices of the peace, over offenders of the class
to which the respondent belongs.

Section 104 of the act of 1875 declares that when any such
person shall " be brought before the recorder, he shall, upon
conviction of such person, *have* power to punish by fine, not
exceeding fifty dollars, or by imprisonment in the common
jail of Chemung county for a term not exceeding six months,
or by both such fine and imprisonment."

So far as the later statute is repugnant to the Revised
Statutes in the territory to which it is applicable, it controls
and, by implication, repeals the Revised Statutes *pro tanto*
(3 *N. Y.,* 290; 32 *N. Y.,* 591; 69 *N. Y.,* 605).

The conviction was regular and the sentence properly
imposed by the recorder, under the provision of the charter
of the city of Elmira. However, under that provision the

recorder was authorized to sentence the offender to imprisonment "in the common jail of Chemung county."

By the agreement beiween the counties of Monroe and Chemung, entered into December twenty-eighth, it was provided that the Monroe county penitentiary should receive and keep persons convicted in Chemung, &c. Chapter 209, section 2 of the Laws of 1874, made it the duty of the recorder, after such contract was made, to sentence such offenders to imprisonment in the penitentiary of Monroe county.

The recorder therefore acted under the requirements of the statute of 1874 when he fixed the sentence of the respondent.

That law was held to be valid in *Brown* agt. *People* (75 *N. Y.*, 437). We therefore must hold that the commitment to the penitentiary was valid. Under and after the sentence of six months' imprisonment the respondent was actually *detained* in custody in the county jail, and in the penitentiary the full period of six months, before the special county judge discharged her.

We think she was enduring the sentence when in custody after the sentence was pronounced.

The case of the *People ex rel. Stokes* (66 *N. Y.*, 342) is distinguishable from the one before us, as there the imprisonment which the court refused to credit upon his sentence was such as he suffered before trial and conviction and sentence.

In the case in hand we are of the opinion that the sentence began to run from the day it was pronounced, and that all the time the respondent was in custody after that day is to be credited upon her sentence. Being thus credited, it appeared to the special county judge that she had been imprisoned six months.

The conviction was not for a felony, and the imprisonment in the county jail was as much of a punishment in theory of law as in the Monroe county penitentiary. This case is therefore not within the reasoning of attorney-general Schoonmaker, stated in his letter of March 14, 1879, to the clerk of

Auburn prison. He was considering cases of felony punishable by imprisonment in a state's prison by becoming "an inmate of a state's prison.

The special county judge having come to the conclusion that "the time for which the prisoner may be legally detained" had expired, properly granted to her a discharge (sec. 2032, 2034, *of the Code of Civil Procedure*). His order should be affirmed.

Order affirmed.

SMITH, P. J., and HAIGHT, J., concurred.