HENRY D. BROOKMAN *et al.,* Respondents, *v.* BENJAMIN MET-
CALF, Appellant.

A provision in the charter of a mutual insurance company that said company
"may receive notes for premiums in advance, from persons to receive its poli-
cies, and may negotiate the same for the purpose of paying claims, or other-
wise, in the course of business," authorizes such company to transfer its notes,
thus received, as collateral security for the payment of its debts.

The parties receiving from such company negotiable notes given for such pur-
pose and transferred as collateral security, are entitled to be protected as
*bona fide* holders, to the same extent, and under the same circumstances, as
parties who become owners of such paper.

APPEAL from the judgment of the Supreme Court of the
city of New York, reversing the judgment entered on report
of referee. The action was brought on a promissory note for
$500, dated 8th November, 1855, made by defendant, pay-
able six months after date to his own order, and indorsed by
him in blank, and delivered to the Atlas Mutual Insurance
Company.

It appeared on the trial that the insurance company, having
become embarrassed, started a subscription amongst its friends
and customers, dated 8th November, 1855, by which the sub-
scribers agreed to give their notes to the company in advance
for premiums, to the amount by them respectively sub-
scribed, with the understanding that the subscriptions should
not be binding unless $300,000 were subscribed. The defend-
ant subscribed $1,000, and afterward gave his notes of $500
each therefor, with the understanding that the sum of
$300,000 had been subscribed. Upon one of these notes this
action is brought. After making his subscription the defend-
ant took policies of the company, the premiums of which
amounted to more than his subscription. These premiums
were charged to him in account, and his notes were credited
to him in the same account, which was the only mode in
which he made payment of such premiums. In fact, the
said sum of $300,000 was never subscribed by valid sub-
scriptions.

On the 10th of December, 1855, the insurance company was indebted to plaintiffs in the sum of $10,139.27 upon three notes given on settlement of losses previously accrued, two of which, amounting to $5,571.56, were past due; these were settled on that day, by the company paying plaintiffs $2,000 in cash, crediting them on their subscription to the fund above mentioned, $2,000, and giving a new note for the balance of $1,751.95, payable four months after date, and at the same time delivering to plaintiffs, as collateral security, the note in suit, with others for which the plaintiffs gave to the company a receipt, as follows :

"Received, New York, December 10, 1855, of the Atlas Insurance Company, the following notes, as collateral to the payment of their note dated this day, at four months, for seventeen hundred and fifty-one dollars and ninety-five cents. If not paid at maturity, then said Brookman & Co. are at liberty to dispose of these securities for account of the company " — followed by a list of the notes and signed by plaintiffs.

On this settlement the plaintiffs gave up to the company the two notes then due as above mentioned.

After the above transfer of his note to plaintiffs, but before the maturity thereof, the company became indebted to defendant for losses sustained by him in a sum greater than the amount of his note. In March following, the company became insolvent and was enjoined, and a receiver of its assets duly appointed. By arrangement between defendant and the receiver, his then outstanding policies were canceled, and the receiver gave him certificates of indebtedness for the unearned portions of the premiums, payable ratably out of the assets of the company. There was also a balance of credit to defendant on the books of the company of $98.87, after charging against his said notes all the earned premiums on the several policies he had taken. The company wholly failed to pay the note of $1,751.95, to which the note in suit was collateral ; and the amount unpaid thereon exceeded, at the trial, the amount of the note in suit.

The referee held, in substance, that the note in suit was a valid security in the hands of the company notwithstanding the condition of the subscription as to the amount to be subscribed thereto was not fulfilled, because the defendant had received from the company a full consideration therefor in the policies taken on its credit by him; that the transfer of the note to defendant was unauthorized and in violation of the provision of the statute relative to moneyed corporations; that plaintiffs are not purchasers for valuable consideration, and defendant was entitled to set off his claims against the company to the same extent as though the action was brought by the company or its receiver, and as such claims exceeded the amount of the note, he found there was nothing due the plaintiffs, and ordered judgment for defendant. The General Term of the Supreme Court reversed the judgment and ordered a new trial, holding that the transfer was legal, and that plaintiffs were holders of the note in good faith for a valuable consideration.

*Beebe, Dean & Donohue,* for the appellant.

*E. H. Owen,* for the respondents.

1. The note was given for a valuable consideration, and was a valid security in the hands of the company at the time of its transfer to the plaintiff. The notes, though given for the amount of the defendant's subscription, and in satisfaction thereof, were also in part payment of his indebtedness for premiums on insurances effected after his subscription and on account thereof.

2. The defendant's notes being given upon a valuable consideration, it is immaterial whether the proposed amount was subscribed or not. (See *Hone* v. *Boyd,* 1 Sandf. S. C., 481.)

3. The notes were given for premiums in advance, under the charter of the company, and were valid as statutory security. (See *Deraismes* v. *Merchants' Mutual Ins.,* 1 Comst., 371; *Brower* v. *Crook,* 4 id., 51.

4. The note being valid on the hands of the company, it was legally transferable to the plaintiffs, and they became the legal and *bona fide* holders thereof for value.

5. The plaintiffs are entitled to maintain this action notwithstanding the terms of the receipt. The right to dispose of the notes given by the receipt, was not a restriction but an enlargement of the plaintiffs' rights as pledgees. (See *Nelson* v. *Eaton*, 26 N. Y., 410; *Wheeler* v. *Newbould*, 16 id., 392; *S. C.*, 5 Duer, 29.)

6. The note having been legally transferred before maturity and for value, the defendant can set off no claims against the company in this action; and therefore, under the stipulation, the plaintiffs are entitled to a judgment for $500, with interest thereon from 11th May, 1856, and their costs, and a reasonable extra allowance.

DAVIS, J. By the charter of the Atlas Mutual Insurance Company (Sess. Laws 1843, ch. 92, § 8), the twelfth section of the charter of the Atlantic Mutual Insurance Company (Laws 1842, ch. 217) is incorporated into and made a part of the charter of the first named company. That section provides that the company "may receive notes for premiums in advance of persons to receive its policies, and may negotiate such notes for the purpose of paying claims or otherwise in the course of business."

The note in suit was given for "premiums in advance" within the sense of this provision. The subscription expressly provided for the giving of such notes; and by receiving policies, the premiums of which were to apply on this note, and the subsequent dealings of defendant with the company and the receiver, by which they were practically so applied, there can be no room for saying that the note was not a valid security in the hands of the company, whether the original subscription could have been enforced or not.

In *Wood* v. *Wellington* (not reported) this court passed directly on the question whether the transfer of such paper by this company is within the prohibition of the eighth section of the first article of the title of the Revised Statutes relative to moneyed corporations. (1 R. S., 59.) In the opinion of HOGEBOOM, J., furnished me in MSS., it is said: "But I think this case must rest on the charter of the company

granted in 1843, which adopts a section of the charter of the Atlantic Insurance Company granted in 1842." (Ch. 92 of 1843, § 8; ch. 217 of 1842, § 12.) These acts were passed subsequent to the Revised Statutes, and so far as they prescribe a rule for the transfer of paper held by the company, different from that declared by the Revised Statutes, they must be deemed to overrule the former law. This was distinctly held in a case in this respect precisely similar. (*Howland* v. *Meyer*, 3 Comst., 291.)

Nor is this in conflict with the decision of this court in *Houghton* v. *McAuliffe*, in December, 1863. There was nothing in the latter case to show that there was any provision in the charter of that insurance company which conflicted with the rule laid down in the Revised Statutes, and the latter was therefore properly held to be applicable. We must, therefore, examine the case with reference to the charter of the Atlas Insurance Company. That charter, in regard to notes received in advance, authorized the company to negotiate them for the purpose of paying claims or otherwise in the course of its business.

In the light of this decision, the note in suit was lawfully transferred in the course of the business of the company. The transfer to plaintiff was not in strict conformity to the by-laws of the company, but there was a compliance with them by previous and subsequent action of the board of trustees, sufficient, I think, to have precluded the company from disputing the right of plaintiffs to hold the notes for the purposes of the transfer. Besides, it is not perceived on what principle the defendant could attack plaintiffs' title to the paper on the ground that the company had transferred it without following the formalities indicated by their by-laws. The referee was, therefore, in error in holding that the plaintiffs' right to the note in suit was affected by the provision of the Revised Statutes above referred to.

The remaining question is, whether the plaintiffs are to be considered *bona fide* holders of the note for value within the meaning of the law, so as to cut off the equitable defense of the defendant.

In *The Bank of the State of New York* v. *Vanderhorst,* this court, at its present term, have passed upon this question, and its further discussion is not necessary. That case settles the principle that parties receiving negotiable paper as collateral security are entitled to be protected as *bona fide* holders, to the same extent and under the same circumstances as parties who become owners of such paper.

Within that rule, the court are of opinion that the plaintiffs parted with value in this case when they made the settlement with the company, and delivered up their former securities on receiving the note for the balance owing them, payable at a future day, and the note in suit as collateral thereto. The judgment should be affirmed.

All the judges concurred.

Judgment affirmed.