THOMAS COCHRAN and WILLIAM W. FLANNAGAN, as Trustees, Respondents and Appellants, *v.* THE ANGLO-AMERICAN DRY DOCK AND WAREHOUSE COMPANY and WILLIAM G. PARSONS, Defendants; WILLIAM F. BUCKLEY and IRA N. STANLEY, Intervenors, Appellants.

*Corporation mortgage — bonds held as collateral security — right of redemption — judgment of foreclosure — insolvency of the corporation — proof as to the actual indebtedness to each bondholder.*

A judgment, in an action brought to foreclose a mortgage made by a corporation to secure its bonds, which gives to a person who holds certain of the bonds as collateral security for a debt of the mortgagor a right to a dividend, out of the proceeds of the foreclosure sale, on the face of the bonds held by him until he receives the amount of his debt and no more, and provides that the surplus of his dividend, if any, shall be applicable to the payment of other bond creditors under the mortgage, is, in effect, consonant with the finding that the mortgagor is entitled to redeem the bonds held as collateral security.

The fact that a corporation was insolvent, to the knowledge of its directors, when it issued bonds and made a mortgage to secure the same, does not render the bonds utterly void, when they were given in fair business transactions with the mortgagor, the obvious purpose of which was to save the corporation and its property if possible, and they were reasonably adapted to that end and not out of the ordinary course of raising money or adjusting ordinary affairs, and the corporation received clear benefit from the transactions, and there has been no rescission or offer to rescind or restore the benefits which it received.

When, in an action brought by the trustees of a corporation mortgage for its foreclosure, the purpose of an order of reference is that every party in interest shall be allowed to appear before the referee and contest the validity of, or the amount due upon, any of the bonds secured by the mortgage, the referee should take such testimony as may inform the court of the actual indebtedness of the corporation to each holder of a bond, no matter what may have been conceded as to the amount of indebtedness by the corporation through its trustees.

APPEALS by the plaintiffs, Thomas Cochran and William W. Flannagan, as trustees, from parts, and by William F. Buckley and Ira N. Stanley, intervenors, from the whole, of a judgment of the Supreme Court, rendered at the Kings County Special Term, and entered in the office of the clerk of Kings county on the 29th day of December, 1892, confirming the report of a referee in foreclosure, and directing the sale of the mortgaged premises.

*Clarence · F. Birdseye*, for the plaintiffs (appellants and respondents).

*Artemus H. Holmes,* for Buckley, intervenor (respondent and appellant).

*William N. Dyckman,* for Stanley, intervenor (appellant).

PRATT, J. :

This is an action to foreclose a mortgage made by the defendant company to the plaintiffs, as trustees, to secure a series of 500 bonds of $1,000 each, dated August 5, 1886. All the bonds, save twenty, have been issued, and are still outstanding. The mortgagor did not defend. W. F. Buckley, a stockholder and creditor of the mortgagor, applied to be made a party defendant. An order of reference was made on that motion to compute the amount due, and Mr. Buckley was allowed to intervene with leave to defend and contest as to the amount due, and he and every other party in interest was thereby allowed to contest the validity and amount due upon any of the bonds. Mr. Buckley, in both above capacities, and Richard Gurney, Jr., and Ira N. Stanley, as stockholders, availed themselves of the privileges provided by this order of reference. The referee made his report. The plaintiffs and Buckley and Stanley excepted thereto. Their exceptions were argued before and overruled by the Special Term. Judgment was entered to this effect December 29, 1892, directing a sale of the mortgaged premises. These exceptants have each appealed from parts of the judgment.

The referee found that the mortgagor was insolvent when the mortgage was made, and had been insolvent for a long time prior thereto, but that the mortgage was not made in contemplation of insolvency.

It appears by the findings, without exception, that the mortgage in suit was the third one which had been made by the mortgagor. The first one was made August 15, 1881, to said Buckley and the plaintiff Cochran, as trustees, to secure a series of 800 bonds of $1,000 each, bearing six per cent interest, payable on or before May 1, 1896. These bonds were all sold to the Guarantee Trust and Safe Deposit Company of Philadelphia, and are still outstanding. The mortgagor afterwards became indebted to that company in $43,500; and, on April 12, 1886, made its second mortgage to that company to secure

the payment of that indebtedness on or before April 14, 1889, with interest. It also became indebted to other persons in large sums, and the mortgage and 500 bonds in suit were authorized by its board of trustees for the purpose of paying the debts accrued subsequent to the first mortgage, and in order to raise money for uses of the corporation. On August 11, 1886, the mortgagor's board of trustees resolved that after applying so many of these new (500) bonds at par as might be necessary to liquidate its existing floating indebtedness, the balance should be deposited with the Philadelphia company as collateral for the $43,500 debt secured by the second mortgage. It was contemplated that that company should sell those bonds and pay that debt out of the proceeds of such sales and apply the balance of such proceeds to the uses of the mortgagor as it might require. That resolution authorized the delivery of the mortgagor's note to the Philadelphia company for the $43,500 debt. The precise course authorized by this resolution was not pursued. On the contrary, the mortgagor's officers settled with the Philadelphia Trust Company for the debt secured by the second mortgage by giving its note dated at Philadelphia, August 17, 1886, for $43,408.74, with interest, payable on demand, and delivered 284 of the 500 new bonds as collateral thereto, with the agreement that the holder might sell that collateral at any broker's board or at public or private sale, without advertisement or notice, and apply the proceeds in payment of that sum and interest, returning the surplus, if any, to the maker, and the second mortgage was thereupon canceled. So that the mortgage in suit became the second mortgage and will be hereafter spoken of as such. This Philadelphia company did not sell any of these bonds as contemplated by the resolution of August 11, 1886. There was no market for them. It held the note and the 284 bonds until November 15, 1890, and then, after repeated demands for payment of the note, gave formal notice that it would *sue* the bonds. It also gave public notice of its proposed sale for November 25, 1890, at the exchange in Philadelphia, of which proposed sale the mortgagor had due notice. It was represented at the sale through Mr. Simpson, its treasurer. The bonds were sold at the time and place specified in the notice and they were bid in by the trust company at $5,000. But the referee has found that the sale was not fairly conducted; that the trust company inten-

tionally discouraged and prevented any competition at the sale, and thus was enabled to, and did, bid in the bonds at about one-eighth of their value. The referee has also found that the trust company before the sale agreed to give the mortgagor an opportunity to redeem the bonds after the sale, and that it, in this way, prevented competition at the sale. He holds that this sale ought not to prevent the mortgagor from redeeming these 284 bonds. The trust company subsequently sold these bonds and its claim to Drexel, Morgan & Co., for $43,862.10, on November 28, 1890, and they assigned them to Arthur C. Vaughn. The proofs show that this sale to Vaughn was on February 14, 1891, in consideration of one dollar. The referee has included the whole principal sum of these 284 bonds and the interest thereon, in the amount due under this mortgage, but he has carefully stated that the debt for which they were held as collateral, including interest, was but $47,480.72, and that Vaughn is entitled only to that sum with interest for those bonds. The plaintiff contends that this is erroneous. We think not. The finding in substance is that Drexel, Morgan & Co. took no better title than the trust company had to these bonds and that Vaughn is in no better position. We see no occasion to criticise this disposition of Vaughn's holdings.

The only question left, on this branch of the case, is whether or not the judgment follows these findings in this respect. As we read its provisions it protects the rights of the parties as thus decided by the referee, and that seems to be the view of the parties who have appealed. It provides that the sheriff, in distributing the proceeds of the sale, shall pay to the holders of these bonds, not the sum due on the face of the bonds, but the sums found due to the individuals who hold them. The provisions of the judgment in reference to payment in bonds and coupons by purchasers at the sale may seem somewhat confusing on first reading, but the effect thereof is simply to give the individual who holds bonds as collateral the right to a dividend on the face of his bonds until he gets the amount of his debt, but no more. If such holder's dividend is greater than the amount actually due to him upon his debt, the surplus, if any, inures to the benefit of the mortgagor; that is to say, it remains in the sheriff's hands applicable to the sums due to other bond creditors under the mortgage. This, in effect, enables the mortgagor to

redeem these bonds, and that, upon these findings and the evidence, is in consonance with justice in the premises.

We now proceed to examine other questions. It is claimed that because the mortgagor, being a corporation, etc., was insolvent, and its directors were cognizant of that fact, all acts through which they secured bonds under this mortgage and the bonds themselves in their hands are utterly void, because necessarily in contemplation of insolvency within the meaning of that phrase as used in the statute. We do not thus understand the rules governing the case. Speaking generally, these bonds were given in fair business transactions with the mortgagor, the obvious purpose of which were to save the company and its property, if possible ; and they were reasonably adapted to that end, and not in any respect out of the ordinary course of raising money or adjusting ordinary affairs. The company received clear benefit from these transactions, and there has been nothing like rescission, or any offer to rescind or restore those benefits which it received. The case, therefore, seems to fall within the rule of *Dunscombe Case* (84 N. Y. 190). We think the referee was right in holding that the bonds were not utterly void.

We think, however, that the judgment must be reversed, and the case sent back to the referee to take testimony with respect to the actual merits of the claims for which all the bonds, other than the 284 above alluded to, were held. The purpose of the order of reference was that Buckley and every other party in interest should be allowed to appear before the referee and contest the *validity* or *amount* due upon any of the said issue of bonds. This means that the court desired information of the actual indebtedness of this company to each holder of a bond. No matter what may have been conceded as to the amount of indebtedness by the company through its trustees, that may have been erroneous or even fraudulent. This intervention was allowed for the purpose of enabling stockholders and creditors to raise and litigate in this summary manner any and every question which they could raise in any manner, or in any action or proceeding. This, be it observed, is not at all inconsistent with the point above decided, viz., that the possessors of these bonds should not be allowed to participate at all in the proceeds of this sale of the mortgaged premises. If they were honest creditors, or advanced money as a present consideration for the bonds, they stand

secured for their honest claims, the same as any other honest creditors to whom bonds were issued, but only to the extent of the merits of their respective claims.

Without holding that the provisions of this judgment are erroneous in respect of the right of a purchaser at the mortgage sale to make payment in bonds, we think that the new judgment should more clearly express the plan adopted in order to avoid confusion in that respect. For example, if Mr. Vaughn should purchase the property for the sum of $284,000, he shall not pay that sum by delivering his 284 bonds. Those bonds would pay only the amount of his claim, say $43,862.10, with interest on that sum. Doubtless this was the meaning of the judgment, but its language leaves this point in some confusion.

Many of the referee's findings might stand, as supported by the evidence, but we think the wiser way will be to reverse this judgment wholly and set aside this report wholly, and to refer the case back to the referee with directions to treat the case before him as still open, and then proceed to take further testimony or listen to any motion which shall bear upon the honesty, fairness and justice of the claim of each bondholder, and then make a new report, so that the case may be presented *de novo* upon exceptions.

The costs and disbursements of this appeal should be allowed to defendants Buckley and Stanley, and the disbursements on this appeal of the plaintiffs should be allowed to them, payable out of the proceeds of the sale of the mortgaged premises.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Judgment reversed and case sent back to referee to take testimony as to merits, in accordance with opinion. Order to be settled by Judge PRATT.