Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

CASE 35—ACTION BY FIDELITY TRUST & SAFETY VAULT COMPANY
AGAINST GEORGETOWN WATER COMPANY AND OTHERS TO FORE-
CLOSE A MORTGAGE.—JAN. 15.

# Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.

# Montgomery, &c. v. Same.

### APPEAL FROM SCOTT CIRCUIT COURT.

FROM THE JUDGMENT DISTRIBUTING THE PROCEEDS OF THE FORECLOS-
URE SALE, ALL PARTIES APPEAL. REVERSED.

CORPORATION—MORTGAGE—RENTS AND PROFITS—MORTGAGED PROPERTY
—RIGHTS OF PURCHASER—BONDS—PRIOR EQUITIES—ASSIGN-
MENT.

Held:  1. Where, on an execution sale of property subject to a mort-
gage, it was held on appeal from an order confirming the sale
that it should be confirmed unless the mortgagee should show
that its security was thereby endangered, but no such showing
was attempted, the sale was binding, and the purchasers are lia-
ble on their sale bond.

2. The holder of mortgaged property is entitled to the rents and
profits thereof while it is still in possession after the court's
refusal to appoint a receiver, though such appointment would
have been proper.

3. Though a court might properly have appointed a receiver of a
mortgaged water-supply plant, it could not require the holder
thereof over its objection, to operate the plant as receiver with-
out compensation.

4. Coupon bonds issued by a company incorporated under the gen-
eral statutes are subject to prior equities in the hands of an
assignee, though he took them in due course of business, and
without notice.

5. Where a corporation, on the security of a mortgage, issues bonds,
of which one creditor holds ten as security for $5,000, and an-
other holds fifty-four as security for $10,000, the holders are
entitled, as between each other, to share in the proceeds, on

326 KENTUCKY REPORTS. [Vol. 117

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

foreclosure of the mortgage, in proportion to the number of bonds, not in proportion to their claims.

6. Where a corporation issues bonds on the security of a mortgage, and a creditor holds some of them as security for a claim equal to their face value, on foreclosure of the mortgage he is entitled to the payment of his entire claim before any of the proceeds go to the corporation, though the proceeds of his share of the bonds are not sufficient for the purpose.

7. To secure an issue of bonds, a corporation gave a mortgage on its water-supply plant, with a provision that worn-out machinery might be replaced, and the new machinery should be subject to the mortgage. The property was sold under execution subject to the mortgage. HELD, that on foreclosure of the mortgage, after payment of such portion of the bonds as are a valid lien on the property, the execution purchaser is entitled to compensation, before any of the fund is paid to the corporation, for additions to the plant which might be removed without injuring the freehold, and which were not put in to supply the place of what was originally mortgaged, but was sworn out, to the extent they increased the price brought at the foreclosure sale.

8. Where a corporation issues bonds on the mortgage security, the assignment of one of them by a person who had no title to it, as security for a personal debt, will be treated, on foreclosure of the mortgage, as an assignment of a portion of his share of the proceeds sufficient to pay the debt.

M. S. TAYLOR, V. F. BRADLEY AND JOHN W. RODMAN, FOR H. P. MONTGOMERY AND ASSOCIATES, AND THE WATER SUPPLY COMPANY.

### POINTS AND AUTHORITIES.

1. The confirmation of the sale of the plants to Montgomery and associates under the judgment of the Central Thomson-Houston Company v. The Georgetown Water Company, was affirmed by the court so far as the Georgetown Water Company was concerned, and its title passed to said purchasers subject to the mortgage lien of the Fidelity Trust & Safety Vault Company, trustee for the bondholders, and the only question left open by said opinion, is whether the security for the mortgage debt was endangered by the sale. 17 R., 1270, 18 R., 711.

2. Chattels attached to the freehold subsequent to the mortgage, will not be subject to the mortgage lien unless so attached

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

that they can not be removed without detriment to the original contract lien of the mortgagee. Clore v. Lambert, 78 Ky., 224.

3. A purchaser at decretal sale is entitled to rents from date of confirmation of sale. Ball, &c. v. First Natl. Bank of Covington, 80 Ky., 501; Taliaferro, &c. v. Gay, &c., 78 Ky., 496.

4. A mortgagee is not entitled to subject rents to the mortgage debt, except by express contract, which must be enforced in the mode and manner provided in said contract, or pursuant to provisions of section 299 Civil Code, by the appointment of a receiver, and only from the time one is appointed, and the appointment of the receiver is in the sound legal discretion of the chancellor. But whether the effort is made to subject the rents or profits under express contract or the provisions of the Code, it can not be done if there are intervening equities of others before steps are taken by the mortgagee for that purpose. Douglas v. Cline, 13 Bush, 621, *et seq.*, Taliaferro, &c. v. Gay, &c., 78 Ky., 498; Woolley v. Holt, 14 Bush, 788.

5. The action of the court upon a motion to appoint a receiver is a final order, and if not appealed from is deemed conclusive upon all parties. Civil Code, sec. 299; Leavell v. Poore, 91 Ky., 321.

6. Where the mortgagor is a corporation of such a character that it is under obligations to perform certain duties to the public, and becomes hopelessly insolvent and unable to meet its indebtednesss, and the mortgagee can not or will not interfere to protect and preserve its mortgage security, persons who furnish their means and services to enable the mortgagor to discharge its public duties, and at the same time preserve and keep in repair the mortgaged property, resulting in substantial advantage to the mortgagee, will be given preference for claims for such money and labor over the mortgagee. Douglass v. Cline, 12 Bush, 630.

H. C. McKEE FOR JAMESON AND OTHERS.

### RECAPITULATION OF FACTS.

1. Georgetown Water Company organized June 21, 1889.

2. Patterson, Nickols & Mitchell, sole owners.

3. Issual of $35,000 of bonds.

4. Patterson, Nickols & Mitchell contract for bonds and stock to complete plant.

5. They borrow, November 6, 1890, $10,000 of Fidelity Trust & Safety Vault Company, and give fifty-four bonds as collateral.

6. They complete water plant.

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

7. They then become owners of all stock and bonds.

8. They then authorize trust company in case of their default to dispose of bonds at its option.

9. They then defaulted.

10. Mitchell, on August 24, 1892, one of the sureties was compelled to pay, and notes and bonds were assigned to him.

11. Mitchell held them from August 24, 1892 to July 3, 1894.

12. On July 3, 1894, he sold and delivered them to E. S. Jameson for $10,000.

13. On July 9, 1894, 330 shares of Mitchell's stock transferred to Jameson.

14. Jameson takes bonds to his dwelling house in Jellico, Tennessee and keeps them for two years.

15. He then takes them to the Citizens' Bank in Jellico, Tennessee, and keeps them for two years.

16. He then in 1898 loans a portion of them to A. E. Mitchell to use as surety.

17. And in 1900 they are found pledged at various banks and with numerous persons.

18. They are traced from their issual in 1890 with the Fidelity Trust and Safety Vault Company, and in 1892 they are transferred to R. A. Mitchell, and in 1894 to E. S. Jameson, and in 1898 pledged for debts of Jameson's and others, and in 1900, again pledged at Cynthiana Bank and other places. And yet you are asked to believe they have never been in possession of any other than R. A. Mitchell.

19. They were sold and delivered to R. A. Mitchell. He sold and delivered them to E. S. Jameson for $10,000 note. He sold $10,000 note to A. E. Mitchell, and A. E. Mitchell sold E. S. Jameson's place at $11,300, and paid the $10,000 debt, and yet owes Jameson $1,300.

### AUTHORITIES CITED.

Welsh v. Loge, 7 Am. Rep., p. 403, "The purchaser for value without fraud or bad faith of stolen negotiable bonds obtains good title thereto;" Seybel v. Natl. Currency Bank, 13 Am. Rep., p. 583; "Negotiable bonds carry title by delivery;" Boyd v. Kennedy, 20 Am. Rep., p. 376, "Stolen negotiable bonds pass title to bona fide purchaser;" Morris Canal & Banking Co. v. Fisher, 64 Am. Dec., p. 423, "Coupon bonds payable to bearer are transferred by delivery;" Greenwell v. Hayden, 78 Ky., 332, "If such paper payable to bearer, or indorsed in blank, be lost or stolen, and be passed in the ordinary course of business before ma-

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

turity into the hands of an innocent holder for value and with-
out notice, such person obtains title, &c.;" Lowe & Whitney v.
Blincoe, &c., 10 Bush, p. 331, "Notice to the purchaser after
his purchase does not affect him. He is by his purchase in-
vested with inchoate legal title, &c;" Bigelow on Frauds, p.
403, A purchaser obtains good title of negotiable bonds even
though his vendor may have gotten them by fraud; The trans-
action is good when the holder obtains them for value, p. 405;
Notice after the purchase completed does not affect him, p. 409;
Statutes begin to run from time fraud was committed, p. 23;
Complainant must give acts to support plea, p. 114; If consider-
ation parted with, restoration can not be made, p. 421; Of
course after it appears that the purchaser was a purchase for
value without notice, evidence of acts or admissions by the
vendor before sale, as well as after, would be inadmissible
against the purchaser, p. 170; Transaction good and considera-
tion passes, p. 405; Trustee in possession may convey to inno-
cent purchasers, p. 404, Kentucky Statutes, sec. 2515, and au-
thorities there cited.

R. P. JACOBS and W. C. BELL, for appellees, F. T. & S. V. Com-
pany, and Patterson and Others.

The principal, if not the sole contention of appellants, Mont-
gomery and others, is that the court below erred in not allow-
ing appellants $13,375.75 claimed to have been expended by
them, in and upon the plants purchased by them under the
judgment of sale, of the Montgomery common pleas court, in
case of The Central Thompson Houston Company v. The George-
town Water Company.

1. This contention should not be sustained because the ap-
pellants refused to declare what profits they had received from
Water Company, etc., and whereby it might have appeared that
they had been fully reimbursed and it was obligatory upon
them, under the terms of the sale and purchase, to preserve
the property, and protect the security of the bond holders,
and they do not contend that they have enhanced the value
of the property.

2. The contention of appellee trustee, is that the appellants
have purchased under the judgment of the Montgomery court,
which expressly provided that the sale and purchase of the
Georgetown Water Company's property should be subject to the
lien, and all the rights secured by the deed to appellee, are
estopped from claiming reimbursement for expenditures in or

**330**        KENTUCKY REPORTS.        [Vol. 117

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

about the property, or the right to remove any additions. The deed of trust or mortgage to appellee (and which will be found on page 17 of vol. 1, of record) expressly provides in the first stipulation that the security should cover all property thereafter acquired by the grantor at any time before the final payment of all the bonds and coupons, and it further provided that it should embrace its electric plant erected and to be erected, with all appliances, machinery, etc., and it is agreed that the party of the first part should take good care of the mortgage property, and to do and permit nothing to be done to impair the security, and it is again provided that the lien of the mortgage shall attach to the new machinery or other property that may be acquired and added by said party of the first part. In the sixth stipulation of said deed, there is a provision for additional assurances for the lien of the mortgage extending to and including all property thereafter acquired by the party of the first part.

It seems impossible to have used language more distinctly manifesting an intention to embrace within the lien of the mortgage all after acquired property or additions to the plants, and the appellants having purchased subject to the lien and the stipulations of the mortgage, can have no better claim to remove the additions to said plants, or for reimbursements than the Georgetown Water Company itself would have had in case it had remained in possession and made the additions and expenditures.

### AUTHORITIES.

Jones on Mortgages, secs. 152, 153, 154, vol. 1, 18 B. M., 443, 17 L. R., 1274; Kentucky Statutes, sec. 2128; Farmer v. Gregory & Stagg, 78 Ky., 475; Rodd v. Lou. Banking Co., filed March 13, 1902, Kentucky Statutes, sec. 48; Ritchie v. Crale, 22 R., 160; Greenwell v. Hayden, 78 Ky., 332; Phillips v. Winslow's Trustee, 18 B. M., 431; Taylor v. Whiting, 9 Dana, 399; Talbert v. Bell, 5 B. M., 326; Smith v. Bell & Co., 9 R., 1.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The Georgetown Water Company was incorporated June 21, 1889. The incorporators were R. A. Mitchell, John Nichols, and E. H. Patterson. The stock of the company was fixed at $100,000, and was issued to the incorporators; they

transferring to the corporation a contract made by them with the city of Georgetown in payment of the stock. They put into the company, each $4,000. They bought ground, erected a plant, and laid mains. They also bought electrical machinery for an incandescent light system. They borrowed from a bank at Pineville $10,000. They owed the Central Thomson-Houston Company of Cincinnati for machinery about $8,000. In January, 1890, they organized the Georgetown Electric Light Company, but no business appears to have been done in the name of this company; everything being transacted in the name of the Georgetown Water Company. On April 15, 1890, the water company executed a mortgage to the Fidelity Trust & Safety Vault Company, as trustee for the bond holders, to secure seventy bonds, of $500 each, with interest at six per cent., having coupons attached, due in twenty years. The mortgage was upon all the property of the company, real and personal, including privileges and franchises then owned or thereafter to be acquired by it; "the said property (as recited in the mortgage) consisting in part of the waterworks plant, pipes, and mains of said first party in the county of Scott and town of Georgetown and its electric plant erected and to be erected with all appliances, machinery, &c., together with all other property of every kind as hereinbefore stated." The mortgage also provided that, when any of the machinery became worn out, the first party should have the right to replace it with new machinery of equal or better quality, and might then dispose of the old machinery; the clause concluding with these words: "And the lien of this mortgage shall attach to such new machinery or other property that may be acquired and added by said party of the first part." In July, 1890, they bought out the Georgetown Gas Company, and consolidated

the three companies in the name of the Georgetown Water Company. In payment of the machinery bought of the Central Thomson-Houston Company, they delivered to it, according to contract, ten of the mortgage bonds referred to, leaving a balance due it of about $3,000.

They ran the electric plant in the summer, and the gas plant in the winter; and it would seem from the evidence that the profit from the operation of the plants, including the waterworks, was small. On February 2, 1891, the Central Thomson-Houston Company filed an ordinary action in the Montgomery common pleas court against the Georgetown Water Company to recover the balance of its debt. The case was tried at the September term, 1891, of the court, and the plaintiff recovered judgment for the amount sued for. On November 6, 1891 the Georgetown Water Company borrowed from the Fidelity Trust & Safety Vault Company $10,000, executing therefor its note, due in six months with Nichols, Mitchell, and Patterson as sureties and also securing the note by pledging with the company fifty-four of the mortgage bonds referred to. This $10,000 was used to pay the debt to the Pineville bank, above referred to. They had still in their hands six of the seventy mortgage bonds having delivered ten to the Central Thomson-Houston Company, and fifty four to the Fidelity Trust & Safety Vault Company. Of these six bonds, Mitchell took two, and Nichols four. Nichols turned over the four he had to John L. Cassell, who was his security, and to whom he assigned all his interest in the company. On March 8, 1892, the Central Thomson-Houston Company, having had execution issued on its judgment, and returned "No property found," filed an equity action in the Montgomery common pleas court, seeking to subject the property of the water company to its

debt, and to have it placed in the hands of a receiver.    In
that case a judgment was entered directing a sale of the prop-
erty of the water company, subject to the mortgage above re-
ferred to. The sale was had, and appellants H. P. Montgomery
and others were the purchasers at the price of $3,525.    The
sale was reported to the court and confirmed.    A writ of
possession was issued in favor of the purchasers, and they
were placed in possession of the property.    After all this,
the water company prosecuted an appeal to this court from
the judgment in the ordinary action in favor of the Central
Thomson-Houston Company, and also from the judgment
in their favor in the equity action.    The judgment in the
ordinary action was reversed for an error in the instructions.
Georgetown Water Company v. Central Thomson-Houston
Company, 17 R., 1270, 34 S. W., 435, 35 S. W., 636.    The
case was returned to the circuit court, where it was tried
again, the plaintiff recovering as before; and this judgment,
on a second appeal, was affirmed by this court.  Georgetown
Water Company v. Central Thomson-Houston Company, 20
R., 1699, 49 S. W., 1113.

On the original hearing of the equity case the judgment
of sale and the confirmation of the sale were both reversed;
but on petition for rehearing, the court's attention being
called to the condition of the pleadings, the opinion was modi-
fied, and it was held that the sale must stand, except as to
the trust company, and that, as to it, it should be permitted
to stand unless the trust company showed that its security
had been endangered.    The court said: "Evidently the
plant brought what it was worth.    The purchasers are not
complaining, the water company can not do so, and, in
our opinion, the trust company has not shown that its in-
terests are at all prejudiced by the order confirming the

sale. The order of confirmation, therefore, will not be dis-
turbed here, and the former opinion is modified to that
extent. While this modification is made in the original opin-
ion, the judgment must stand reversed as to the Fidelity
Trust Company, so that the rights of the bondholders it may
represent may not be affected or prejudiced by the sale to the
appellees, and any lien it may have in its own right, or for
those it represents, on the property of the water comapny, its
rights and franchises, will be retained, as if no such judgment
had been rendered. On the return of the case, the judgment
in so far as it affects the Fidelity Trust Company, will be set
aside, with the right of the trust company to show, if it can,
by appropriate pleadings and proof, that its security has
been endangered by reason of the sale to appellees; and, if
so, the sale will be set aside, and not otherwise." George-
town Water Co. v. Central Thomson-Houston Co., 17 R.,
1270, 35 S. W., 637.

No steps appear to have been taken by the trust company
in the circuit court to show that its security was endanger-
ed, but at the next term of this court a motion was made
that the court withdraw the modified opinion. · The motion
was overruled. Georgetown Water Co. v. Central Thomson-
Houston Co., 18 R., 711, 38 S. W., 137. A year or more
after this, on January 19, 1898, the Fidelity Trust & Safety
Vault Company, as trustee for the bondholders, instituted
an equity action in the Scott circuit court, making all part-
ies in interest defendants, and seeking the foreclosure of
the mortgage. Montgomery and his associates, who had
organized themselves into the Georgetown Water Supply
Company, were in possession of the property, and had been
since they were put in possession of it under their purchase.
The town of Georgetown had nearly doubled in size since

the year 1889.    The incandescent light system, which was
originally put in, was suitable only for lighting residences
and the like.    To light the streets of the town, they had
put in an arc light system in addition to the incandescent
system.    There were only about fifty poles up when they
took charge.    They bought and put up something over 300
more.    They extended the lines until now they have about
fifteen miles of electric light line. They also put in additional
water mains, as demanded by the exigencies of the pub-
lic necessities, in order to preserve the franchises of the com-
pany.    The machinery of the arc system was separate from
the machinery of the incandescent light system, and could
be moved without injury to the freehold.    They put it
in upon the idea that they would have the right to remove
it when they were required to give up the property.

After this suit was brought, the court allowed them to re-
move all the machinery from the lot where it stood to the
lot of the street railway company, upon their giving bond
that they would return it to the original lot when required
by the court.    After they removed the machinery to the
premises of the street railway company, they added other
machinery, costing them $4,300.    When the court required
the machinery which had been removed to be returned to the
lot of the Georgetown Water Company, he allowed them
to retain the additions which they had purchased and had
on the lot of the street railway company, amounting to $4,300,
but refused to allow them to remove the arc light system
or the other additions which they had made to the plant be-
fore its removal from the original lot, and ordered the whole
property sold; giving them no compensation for their better-
ments, which had cost them something over $12,000.    He
also held that they were responsible to the bondholders for

336            KENTUCKY REPORTS.            [Vol. 117

Georgetown Water Co. v. Fidelity Trust & Safety Vault Co.
Montgomery, &c. v. Same.

the rent of the property while in their possession from the
time that a motion to put the property in the hands of a re-
ceiver had been made and overruled in that action at a pre-
ceding term.

After the note for $10,000 to the Fidelity Trust & Safety
Vault Company fell due, Mitchell, as surety, was forced to
pay it.     The notes and bonds pledged to secure it were then
turned over to him.     He turned over the bonds to E. S.
Jameson, his brother-in-law, who was his surety, who held
them for a while, and finally sent them to Mitchell, who
pledged them to various parties to secure loans made in the
main to his mother, Ann E. Mitchell.     R. A. Mitchell sent
one of the bonds to E. H. Patterson, in Philadelphia, to
exhibit it to some persons there to whom they were trying to
make a sale of the property.     Patterson kept this bond, and
hypothecated it to D. B. Logan to secure a debt of his own.
The money which Patterson put into the concern belonged
to his wife, and he transferred to her his interest in the cor-
poration.     The court, on final hearing, held that the mort-
gage included property acquired after it was executed, and
not owned by the Georgetown Water Company when the
mortgage was given; that H. P. Montgomery and his asso-
ciates, having purchased subject to the mortgage, simply
stood in the shoes of the Georgetown Water Company, and
could not question the lien of the mortgaged on the after-
acquired property; that $27,000 had been put into the plant,
made up of $12,000 contributed by Nichols, Patterson and
Mitchell, $10,000 borrowed from the trust company, and
$5,000 of the account of the Central Thomson-Houston Com-
pany for the machinery furnished, which had been paid
in the ten bonds, of $500 each, accepted by that company
at par; that Nichols transferred to Cassell and that Pat-

terson transferred to Logan, the bonds referred to, in due course of trade; and that Cassell and Logan took them free of prior equities. He adjudged the property to be sold, and after the payment of certain prior debts, not here in dispute, five-twenty-sevenths of the proceeds should be paid to the Georgetown Water Supply Company, the assignee of the Central Thomson-Houston Company, as the part of the proceeds coming on the five bonds held by it; that twenty-two-twenty-sevenths of the proceeds should constitute a fund for the payment of the other bonds; that Cassell and Logan should be paid the part of the proceeds represented by their bonds; that, out of the proceeds of the fifty-four bonds held by the trust company as collateral, Mitchell should be paid the $10,000 he had paid the trust company, with its interest; and that the remainder of the proceeds of these bond belonged equally to Mitchell, Patterson, and Nichols, or their assigns. The water supply company offered to surrender the property to the court when the judgment was entered. The court refused to permit this, and ordered it to retain possession of the plant, and operate it upon the same terms as if the company had been appointed a receiver, until delivered to the purchasers, except the company should receive no compensation for its services as receiver, and keep a full and accurate account of the receipts and expenditures in the operation of the plant, and report them to the court at the next term. From this judgment all the parties have appealed. The property was sold under the judgment, and brought $30,000. The sale was confirmed. The courts ordered Montgomery and his associates to pay their bond executed upon their purchase of the property, subject to the mortgage above referred to; this bond having never been collected.

It was held by this court in the modified opinion that the
order of confirmation of the sale to Montgomery and his as-
sociates would not be disturbed here, and that on the return
of the case it might be set aside if the trust company showed,
by appropriate pleadings and proof, that its security had been
endangered, but that otherwise the sale should stand.    The
sale was therefore left in effect by this court.    The trust
company did not show by pleading or proof that its security
had been endangered, and no order was made setting aside
the sale.    The court therefore properly ordered the pur-
chasers, Montgomery and his associates, to pay their sale
bond.

Their sale standing, and they being required to pay the
purchase money, they held the property as purchasers, and
are not liable to the Georgetown Water Company, or the
bondholders, or the trustee for them, for the rents on the
property.    The mortgagee is only entitled to the rents from
the time that he has a receiver appointed to save them for
him.    When the motion was made for a receiver, and was
overruled, the remedy of the mortgagee was to appeal.    He
could not acquiesce in the decision of the court refusing to
appoint a receiver, and then hold the defendant accountable
for the rents.    If the Georgetown Water Company had
remained in possession, it would have been entitled to the
rents up to the confirmation of the sale; and Montgomery
and his associates, succeeding to all the rights of the water
company, are entitled to the rents of the property while in
their possession.    This is what they obtained by their pur-
chase.    The court had no authority to order them to op-
erate the plant as receiver without compensation.    The court
might have appointed a receiver for the property if he had
seen fit to do so, but he could not require the defendant

to act as receiver, and assume the responsibilities of the position over its objection.

The Georgetown Water Company was incorporated by articles filed in the county court under the General Statutes.    It had no power by law to issue coupon bonds which should pass by delivery.    The paper issued by it was not placed on the footing of a bill of exchange, as provided by the statute.    Although the bonds had coupons attached to them, and were payable to bearer, they were, in legal effect, only promissory notes, and each assignee took them subject to prior equitites.    Richie v. Cralle, 108 Ky., 483, 20 R., 160, 56 S. W., 963; Fidelity Trust & Safety Vault Co. v Carr (23 R., 2409) 66 S. W., 990, and cases cited.    None of the bondholders, therefore, are protected by the fact that they took the bonds in the due course of business, and without notice.    We find no evidence in the record that the corporation ever disposed of the four bonds which Nichols took possession of and delivered to Cassell, or the two which Mitchell took possession of and disposed of as his own.

These bonds were the property of the corporation, and, not having been disposed of by it, remain its property, and can not be enforced in this action as a lien on its plant.    The ten bonds delivered to the Thomson-Houston Company, and the fifty-four bonds delivered to the trust company as collateral to the note of $10,000, are the only bonds which constitute a lien on the property.    After the prior claims as adjudged by the circuit court are paid, ten-sixty-fourths of the fund remaining should be applied to pay the ten bonds sold to the Central Thomson-Houston Company, and fifty-four-sixty-fourths of it to pay the fifty-four bonds pledged to the trust company to secure its note.    The trust company had the right to look to the entire proceeds of these bonds

for the payment of its debt, and, when Mitchell paid the debt as surety, he succeeded to all the rights of the trust company, and had the right to look to the entire proceeds of the fifty-four bonds for the repayment of his money and interest. The remainder of the proceeds of these fifty-four bonds, after the payment of Mitchell's debt, with interest, is, as between it and Mitchell, the property of the water company, for Mitchell has no claim on them except the lien for the repayment of his money, with interest. If the ten bonds held by the Central Thomson-Houston Company are not paid in full by ten-sixty-fourths of the net proceeds of the sale above directed to be paid upon them, the remainder of the principal and interest of these bonds should be paid in full out of the funds set apart to the water company after the payment of Mitchell's debt out of the proceeds of the fifty-four bonds, as above indicated. For the water company is the obligor in the bonds held by the Central Thomson-Houston Company, and must discharge its obligation out of the funds coming to it before it can be allowed to withdraw any part of the proceeds of the sale. The substance of the situation, as between the Central Thomson-Houston Company and the water company, is that the former company holds the promise of the latter to pay it $5,000, secured by a lien on the property in contest, and, as between the two, the water company's right to the proceeds of the sale is subordinate to the lien of the Central Thomson-Houston Company.

When all the bonds are thus paid off, so far as they are a valid lien on the property, the remainder of the fund, if nothing else appeared, would be the property of the water company; and the question arises whether this fund thus remaining should all be adjudged to the water company, or whether Montgomery and his associates should be adjudged

compensation out of it to the extent of its enchancement by reason of the betterments placed by Montgomery and his associates on the property. The proof leaves no doubt that Montgomery and his associates not only kept the plant in repair, replacing what was worn out, but put in the arc light system, extended the mains and lines; advancing a large sum of money for this purpose, and putting all the net earnings of the company into it; thus causing it to bring, when finally sold, $30,000, when it was, at the time they got it, under the evidence, worth very much less. The rule is, as between vendor and vendee or mortgagor and mortgagee, that chattels attached to the realty by the vendee or mortgagor are not subject to the lien, when they are not intended as a permanent accession to the freehold, and may be removed without substantial impairment of the property.

In Clore v. Lambert, 78 Ky., 224, a steam engine and planing mill, attached to a building by bolts and screws by the vendee, were allowed to be removed after a suit was brought to enforce the vendor's lien. Under the rule thus declared, the arc light system and other machinery bought by Montgomery and his associates, which might be removed from the building without injury to it, might, as between vendor and vendee, have been detached and taken away. But it is insisted that the mortgage in this case provides that it should cover after-acquired property placed on the land by the water company, and that, as Montgomery and his associates bought subject to the mortgage, they stand in the shoes of the water company, and can not be heard to say that after-acquired property which they bought and placed on the land is not covered by the mortgage. Where negotiable bonds have been issued, secured by a mortgage of a railway company on property then on hand or thereafter

to be acquired, the mortgage is upheld, in favor of the bond-holders, as to after acquired property; otherwise long-time bonds could not be issued, and money raised upon them. Westinghouse Electric, etc., Co. v. Citizens' St. R. Co., (24 R., 334) 68 S. W., 463; Porter v. Steel Co., 122 U. S., 283, 7 Sup. Ct., 1206, 30 L. Ed., 1210; Jones on Mortgages, section 436. But where no bondholder is interested, and the controversy is between the bona fide occupants of the property and the mortgagor after the mortgage debt has been satisfied, a different question is presented. As between them, the occupants should have been allowed to remove from the premises all such fixtures as were removable as between vendor and vendee. To illustrate: If it had turned out in this action that none of the bonds were enforceable against the water company, and that there was no lien on the property under the mortgage, it would hardly be maintained, as between Montgomery and his associates, on the one hand, and the water company on the other, that they would not have the right to remove from the property such fixtures as are removable between vendor and vendee, for the stipulation in the mortgage as to after acquired property is for protection of the mortgagee, and affords no reason for putting into the treasury of the water company the property of the purchasers who bought subject to the mortgage, and placed the chattels on the property on the idea that they might remove them when they were required to surrender possession. If none of the bonds had been sold by the water company, the relation of mortgagor and mortgagee would, in effect, exist between the water company and the parties who bought subject to the mortgage, and held possession under their purchase. The water company would then be entitled to the benefit of the mortgage to the extent of the

amount named therein, but this would not enable it to say that the stipulation of the mortgage as to after-acquired property placed on the land by it, made for the benefit of the bondholders, should inure to its benefit as against the purchasers who took subject to the mortgage, and give it a lien on their after-acquired property, which it would not otherwise have.    If the water company had paid the note to the trust company, and had taken up the five bonds held by the Central Thomson-Houston Company, and had then filed this suit itself to have the mortgage foreclosed, and the amount of the mortgage debt paid to it, it could hardly maintain that  it was entitled to have a foreclosure on anything more than its property, or that Montgomery and his associates could not remove anything in that event from the premises which would be removable between mortgagor and mortgagee.    Yet this is, in substance, the case we have as to the surplus left after the payment of the bonds, as the bonds were not negotiable, and are not enforceable against the water company further than as indicated.    2 Jones on Mortgages, section 1491.

We therefore conclude that, out of the surplus left after the payment of the bonds which would otherwise be adjudged to the water company, compensation should be made to Montgomery and his associates to the extent that the price which the property brought at the sale was enhanced by the betterments placed thereon by Montgomery and his associates, which were removable by them under the rule laid down in Clore v. Lambert.    This will include not only the machinery in the power house, but the additional water mains put in by them and the additional electric lines put up by them, for these could be disconnected from the old mains and lines without any impairment of their value.

Nothing will be allowed for repairs on the old plant, or the old mains or lines, or for anything which was put in to supply the place of what was originally mortgaged, but worn out.    The amount of compensation to be allowed them is not the cost of the property which they added, but the extent to which these additions enchanced the price which the property brought at the sale, as near as it can be ascertained by proof of what the whole property consisted of, and its value, and proof of the value of the additions above referred to, and such other evidence as may be had.    On the return of the case to the circuit court, it will be referred to a commissioner to report in detail what additions were made by Montgomery and his associates, for which they should be allowed as above explained, giving the value of each, the value of the other property covered by the mortgage, and to ascertain, as nearly as can be done, how much of the $30,000 for which the property sold represents the additions made by Montgomery and his associates, for which they should be compensated, as above explained.    After Montgomery and his associates, are paid, the rest of the fund will be adjudged to Mitchell, Patterson, and Cassell, or their assigns; Mitchell being first paid $296.95, as adjudged by the circuit court.    The assignment of the bond to D. B. Logan should be treated as an assignment to Logan of $250, with interest from April 1, 1897, out of Patterson's share of the proceeds.    The assignments of the other bonds by R. A. Mitchell or his assignees should be treated as assignments of the proceeds of the bonds as herein adjudged, which should be paid accordingly.    Patterson took no title to the bond which Mitchell sent to him simply to show to others, and Patterson's assignment of this bond to Logan should be treated simply as a transfer by Patterson to Logan of enough of

his share in the surplus to pay Logan's debt of $250. The court properly held that this surplus should be equally divided between Patterson, Mitchell, and Nichols, or their assigns.

Judgment reversed, cause remanded for further proceedings consistent herewith.

Chief Justice Burnam and Judge O'Rear, dissent from so much of the opinion as gives Montgomery and his associates compensation for their betterments.