(No. 23973.—

The First National Bank of Ottawa, Appellee, *vs.* The Kay Bee Company *et al.*—(The Smith Trust and Savings Bank, Appellant.)

*Opinion filed April 16, 1937.*

McCALMONT, RAMSAY & BULL, for appellant.

HIBBS & POOL, for appellee.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

On October 29, 1932, the Kay Bee Company (hereinafter called the company), a corporation, was indebted to the First National Bank of Ottawa (hereinafter called the Ottawa bank) and also to the Smith Trust and Savings Bank of Morrison (hereinafter designated the Morrison bank) for money borrowed of the respective banks. Each bank held the company's notes representing the debt due from it. In financing the company the banks acted independently of one another. On the day above mentioned the company made and delivered its trust deed by which it conveyed to the Ottawa bank, as trustee, certain real estate in Whiteside county, Illinois, to secure the payment of $50,000, evidenced by the company's two bearer bonds, Nos. 1 and 2, each in the principal sum of $25,000 maturing July 1, 1938, bearing 6 per cent interest, payable semi-annually. By the terms of the trust deed there was no priority between the bonds. To secure the indebtedness then owing by the company to the respective banks, as well as any future and additional loans which each might make to it, the company delivered and pledged bond No. 1 to the Ottawa bank and bond No. 2 to the Morrison bank. The company defaulted in the payment of the interest due on its bonds. Under the authority granted by the terms of the trust deed, foreclosure proceedings were instituted. At that time the Ottawa bank held the company's eight notes aggregating the principal sum of $24,000. The Morrison

bank had the company's six notes in the principal sum of $16,500. There was in addition accrued interest due each bank. On March 20, 1936, a decree of foreclosure was entered by the circuit court of Whiteside county. The decree found there was due the Ottawa bank, $24,956.20, for which it held as collateral security bond No. 1, and due the Morrison bank, $17,117.25, for which it held as collateral security bond No. 2. The mortgaged premises were directed to be sold to satisfy the indebtedness. The decree further provided that if the sum should be insufficient to pay the several amounts due the respective banks, then the master should distribute the fund in the proportion that the sum due each bank bore to the total amount due both banks. By the stipulation of the parties the question as to the correctness of that portion of the decree which directed the method of the distribution of the funds as between the banks was certified to the Appellate Court for the Second District. That court affirmed the decree of the circuit court. The Morrison bank, on leave granted to appeal, brings the record here for review.

The Morrison bank takes the position that until such time as the debt secured by the hypothecated bonds is satisfied, the proceeds of the foreclosure sale should be pro-rated between the banks on the basis of the proportion which the bond held by each bore to the total amount of the bonds issued. The issue presented is one of first impression in this State.

The Ottawa bank contends there is a distinction to be made in those cases where the obligation of a third person is pledged by a borrower to secure his primary obligation, and the pledging of the borrower's own obligations. It insists the correct rule is, that the debtor's additional promise to pay cannot be treated as collateral security for any debt he then owes. The rule invoked is applicable where the debtor's additional promise to pay, purported to be pledged as collateral security for his primary obligation,

is not secured by a lien or property, but is not pertinent where the debtor's additional promise is so secured. *In re Waddell-Entz Co.* 67 Conn. 324, 35 Atl. 257, cited by the Ottawa bank recognized this exception to the rule. It was there stated that where the debtor's additional promise is secured by a lien or by the obligation of a third person, such additional promise may be treated as collateral security, and recourse had thereto to the extent of the benefit afforded by such lien or obligation. The case of *Peacock* v. *Phillips,* 247 Ill. 467, is cited by the Ottawa bank as supporting its position. The holding in that case was, that where a note of $4000, secured by a mortgage, had been pledged to secure the borrower's primary debt of $2500, and, on default, the collateral was sold, the purchaser of the collateral, with notice that the actual debt was only $2500, could not, by foreclosure, enforce the collateral mortgage note for a greater amount than the debt owing the pledgee. That case does not decide the issue made here. One who holds bonds pledged as collateral to secure the repayment of a loan is, as to the extent of the primary debt, a *bona fide* purchaser of the bonds, and in the enforcement of his rights is entitled to like protection as a purchaser in due course. *Brookman* v. *Hoge,* 32 N. Y. 591; *Nelson* v. *Edwards,* 40 Barb. (N. Y.) 279.

The purpose of a pledge is to give the creditor additional security out of which payment of the primary debt may be made. In the case at bar the bonds secured by the trust deed stood on the same plane. When they were pledged, each bank, for the purpose of further protection to its primary debt, owned one-half of the security furnished by the trust deed. By the sale of the property under the foreclosure of the trust deed, the funds derived are substituted for the real estate. By the conversion of the property into money through sale under the foreclosure, the security afforded by the bonds pledged to the respective banks, did not shift so that the funds should be distributed on the

basis the debt due each bank bore to the total of the primary debts due the two banks. So to hold would, in practical effect, give the bond held by the creditor to whom there was due the larger debt, a preference over the creditor to whom the lesser amount was due. The application of a different rule would result in a variable and shifting factor in the value and extent of the security granted the creditor to whom had been pledged a portion of a series of corporate bonds, the value varying in accordance with the amount of primary indebtedness held by other creditors holding like hypothecated bonds as collateral security therefor. The rule applicable is, that the two banks, as the holders of the several bonds pledged to them respectively as surety for the primary indebtedness of each, should share in the funds derived from the sale of the mortgaged property, until the primary indebtedness is satisfied, on the basis of the bond held and not on the factor of the aggregate debt owing the banks. Authorities recognizing this rule are: *In re Regent's Canal Iron Works Co.* L. R. 3 Ch. Div. 43; *Western Supply and Manf. Co.* v. *United States and Mexican Trust Co.* 41 Tex. Civ. App. 478, 92 S. W. 986; *Georgetown Water Co.* v. *Fidelity Trust and Safety Vault Co.* 117 Ky. 325; *Newport Co.* v. *Douglass,* 12 Bush (Ky.) 673, 720; *Duncomb* v. *N. Y., H. & N. R. R. Co.* 84 N. Y. 190; *Cochran* v. *Anglo-American Co.* 69 Hun, 168; *In re Hodge's Appeal,* 84 Pa. St. 359; *Morton and Bliss* v. *N. O. and S. Ry. Co.* 79 Ala. 590, 621.

The judgment of the Appellate Court, and that portion of the decree of the circuit court of Whiteside county directing the method of distribution of the funds to be derived from the sale of the mortgaged premises, are severally reversed and the cause is remanded with directions to the circuit court to enter a decree in conformity with the views herein stated. *Reversed and remanded, with directions.*