CASE 49.—ACTION BY THE ASSIGNEE OF THE LOUISA WATER COMPANY, AN INSOLVENT TO SETTLE THE ESTATE, IN WHICH THE MILLER SUPPLY COMPANY AND OTHERS FILED ANSWER AND CROSS PETITIONS.—March 18.

## Miller Supply Co. v. Louisa Water Co's Assignee, &c.

Appeal from Lawrence Circuit Court.

M. M. REDWINE, Circuit Judge.

From the judgment, the Miller Supply Co appeals. —Reversed.

1. Chattel Mortgages — Recording — Place.—Ordinarily personal property has the situs of the residence of the owner, and a mortgage thereof should be recorded in that county.
2. Same—Description of Property—Certainty.—A chattel mortgage which does not locate the property as to State, county, or town, and which contains no reference to supply the omission, is void for uncertainty.
3. Same.—A chattel mortgage executed by the owner of a franchise to build and operate a waterworks plant, which describes the property as a designated number of feet of "spiral pipe," and which does not use any language by which it may be identified from pipe furnished by third persons, is void for uncertainty.
4. Assignments for Benefit of Creditors—Priorities—Judgment— Right of Creditors to Complain.—A water company having a franchise to operate a water plant in a town made an assignment for benefit of creditors, consisting, among others, of

citizens entitled to receive water until the money advanced by them had been repaid. The plant was sold, and the purchaser assumed obligation to furnish the citizens with water. Held, that the error, if any, in imposing on the purchaser such obligation, did not affect the other creditors, and the court on the appeal of a creditor would not consider it.

5. Same—Liens—Priorities.—Where an assignor for the benefit of creditors was indebted to sellers of goods under contracts stipulating that the title should remain in the sellers until the price was paid, which contracts was recorded, the sellers had a lien on the goods for the price.

6. Same.—A water company operating a water plant in a town made an assignment for the benefit of creditors. It had bought an engine and pumps under contracts stipulating that the title should remain in the sellers until the price was paid. The price had not been paid. The engine and pumps were used as a part of the plant, and could not be sold separately without injury to the plant. Held, that the court, on directing the sale of the plant as a whole, should ascertain the cost of each item constituting it, and ascertain what per cent. the cost of the engine and pumps bore to the total of all the items, and give the sellers that per cent. of the proceeds of the whole plant, and, if their whole claims were not then satisfied, they should be permitted to present the balance as a general claim and to share with the other creditors pro rata, as provided by Ky. St. 1903, section 74.

THOS. R. BROWN for appellant.

### AUTHORITIES CITED.

Brown v. Vancleave, 86 Ky. 381, 9 L. R., 593; Hearn, etc. v. Lander, 11 Bush, 669; Iron Age Publishing Co. v. Western Union Telegraph Co., 83 Ala. 494, 3 Amer. St. Rep., 758; Electric Lighting Co. v. Mobile Railway Co., 109 Ala. 190, 55 Amer. St. Rep., 927; Vallandingham v. John, 85 Ky. 288, Ky. St., 496; Simon v. Wilde, 84 Ky., 157; Zaring v. Cox, 78 Ky., 528; Swigert v. Bank of Kentucky, etc.; Forepaugh v. Appold, 17 B. M., 631; Morton v. Roberts, 4 Dana, 263; Cincinnati Leaf Tobacco Warehouse v. Combs, 22 Ky. Law Rep., 523; Coppage v. Johnson, 21 L. R., 1357; Vaugh v. Bell, 9 B. M., 447.

SULLIVAN & STEWART for appellee.

LOUIS J. DOLLE, of counsel.

Baldwin et al. v. Warren, 39 Southwestern, 25; Wicks Bros. v. McConnell, 102 Ky., 438; Star Drilling Machine Company v. McLeod, 92 Southwestern, 558, 29 Ky. Law Reporter, 84; Townsend v. Frazier, 54 Southwestern, 722; Pomeroy's Equity Jurisprudence, 1299, 1244; Story's Equity Jurisprudence, 633; Swigert v. Bank of Kentucky, 17 B. Mon., 288; American and English Encyc. of Law, 957; Baldwin v. Crow, 88 Ky., 679; Civil Code of Prac., 694, 695.

SULLIVAN & STEWART for appellee, Fairbanks, Morse and Company.

HAGER & STEWART for appellee, American Spiral Works.

## POINTS AND AUTHORITIES.

1. Appellant's mortgage is not a recordable instrument in Lawrence county, and is incurably void for uncertainty in that it did not locate the property as to State, county or town, and its recitals, in legal effect, show that the property was elsewhere than in the county of Lawrence, where the mortgage was recorded. (Coppage v. Johnson, 107 Ky., 620; Sec. 66 Jones on Mortgages, and cases cited, viz: Boyd v. Ellis, 11 Iowa, 97; 44 Con. 124; 41 Ark., 408; Adkins v. Paul, 67 Va., 97; Sec. 495, 496, Ky. Stats.; Pearce, &c. v. Hall, 12 Bush, 209.)

2. The debts of Cox specifically assumed by the Louisa Water Company are of equal merit, and the equality of equity as between them respected in the judgment below should prevail here, or hereafter in the event of a reversal.

3. The board of directors in utter disregard of the limitation contained in the articles restricting indebtedness, are responsible for the plight of the creditors of the company. Without such having been done and permitted, the rights of none would have been prejudiced. This being true, and if the cause is to proceed further, the allowances in the judgment appealed from in favor of A. J. Garred, a director and officer of the company from its inception, should be expunged, or at least deferred, until all creditors, other than officers of the company, are paid in full. Gunther Bro. &c., v. Baskett Coal Co., &c., 107 Ky., 620; First National Bank v. Kiefer Milling Co., 95 Ky.; 97; Bell & Coggshall Co. v. Glass Works Co., 106 Ky., 7; Haldeman v. Ainslie, &c., 82 Ky., 408.)

4. As to the one thousand dollars paid the Guaranty Company, this, in any event, created excessive indebtedness, added nothing to the assets or of value to the business of the Water Company, and constituted a negligent waste, and as to contingent liability

as endorser for one thousand dollars, this, in view of the probable future suspension of the business of the Water Company, could not be used as preferenec or to the prejudice of the general creditors of the company.    (Thompson on Corporations; 6503.)

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

In the spring or summer of 1904 one W. B. Cox procured a franchise from the town of Louisa for the building and operating a waterworks and sewer system in that town. It appears that prior to September 2d of that year Cox purchased considerable material in the way of water pipes, machinery, etc., and had laid the pipe, installed the machinery, and done considerable work toward completing the system. · He purchased pipe from appellant, Miller Supply Company, to the amount of about $2,500, and from appellee, American Spiral Pipe Works, to the amount of about $3,000, and it also appears that 14 citizens of the town agreed to and did furnish Cox $100 each to enable him to construct the waterworks, upon condition that each of them would be permitted to receive a supply of water from the works at the same rates that water was furnished to others in the town until the $100 was repaid to each. And it was also stipulated that if the waterworks were not completed, or if for any cause the plant was sold or assigned, they should have a lien upon the whole plant to secure them in the amount so advanced. This contract was recorded in the early part of 1905. On September 2, 1904, the Louisa Water Company was incorporated, and directors and officers elected. The corporation, by an order entered in its books, assumed and agreed to pay the above-named claims and others not necessary to mention here. On the 10th day of March, 1906, the Louisa Waterworks became insolvent, and made a gen-

eral deed of assignment of all its property to G. W. Castle, who qualified as such assignee and at once entered upon the duties of his office. Soon thereafter the assignee instituted this action for the purpose of settling the estate and having the priority of creditors adjudged, and for a settlement of all matters pertaining to the trust. Appellee, Fairbanks, Morse & Co., filed its answer and cross-petition to the petition of the assignee, and set up a contract entered into between it-and the Louisia Water Company, of date August 31, 1905, for the price of a gasoline engine and a pump, which was agreed to be $2,100, payable in installments. The contract provided, among other things, that the property sold should belong to it, and that the title should remain in it until fully paid for, which contract was recorded in the office of the Lawrence county court, and prayed that its lien be enforced. A similar pleading was filed by A. J. Garred, assignee of Rumsey & Co., with reference to the pump which was purchased of Rumsey & Co. at the price of $600, and a lien asserted on it for $600. Appellees, the 14 citizens referred to, filed their pleading, alleging the facts before stated, and asserted a lien for the balance due them on the contract. (Most of them had received something like one-half of their claims in water furnished by the company.) Appellant, Miller Supply Company, and appellee, American Spiral Pipe Works, filed answers, both resisting the liens asserted by Fairbanks, Morse & Co., Garred, assignee of Rumsey & Co., and the claims of the 14 citizens; and each set forth their respective claims, and asserted liens on the pipe sold by each to the Louisa Water Company. The Miller Supply Company, by reason of a mortgage which it filed with its answer, and the American Spiral Pipe Works, by reason of an execution, levied on the

property of the waterworks company. This execution lien was abandoned for the reason that it was not levied until after the date of assignment made by the company to G. W. Castle. The cause was referred to the master commissioner to take proof and to report all claims against the waterworks company, and to determine which claims were liens against its property. The master commissioner made his report, and reported liens in favor of the 14 citizens for the balance due them, and in favor of Garred, assignee of Rumsey & Co., a lien on the pump sold by it, and in favor of Fairbanks, Morse & Co., allowing it a lien on the engine and pump sold by it to the waterworks company, but reported from the proof that this engine and pump and the pump furnished by Rumsey & Co. were attached to and were being used as a part of the waterworks system, and could not be detached and sold separately without materially injuring the property as a whole, and it was in the interest of all creditors that the property be sold together. Exceptions were filed to this report by the Miller Supply Company because the commissioner failed to report its claim as secured by mortgage lien, and because it allowed the claims of the 14 citizens and gave them a lien upon the property, and also because he reported that Fairbanks, Morse & Co. had a lien on the pump and engine. The court tried and overruled the exceptions to which appellant, Miller Supply Company, objected and excepted. The court adjudged that the Miller Supply Company had no lien upon the property to secure its debt; that Fairbanks, Morse & Co. and Garred, as assignee of Rumsey & Co., had liens on the engine and pumps, and, as they were being used as a part of the water system and could not be sold separately without greatly injuring the whole system, gave

them a preferred lien on the whole property of the
water plant, and also directed that the whole property
be sold with the directions that the purchaser carry
out the contract made by Cox and the water company
with the 14 citizens referred to, viz., furnish them
water at the same rate charged other citizens of the
town until the balance of their claims were paid. To
this judgment appellant excepted, and superseded so
much of it as gave Fairbanks, Morse & Co. a prior
lien upon the property, and directed that its claim be
paid first out of the proceeds of sale. Appellant, Mil-
ler Supply Company, assigns, in its brief, the follow-
ing reasons for reversal of the judgment: First. The
court erred in refusing to adjudge it a lien upon the
pipe which it sold and delivered to the water com-
pany. Second. Because the court allowed the claims
of the 14 citizens and directed the property to be sold
with directions for the purchaser to carry out the con-
tract made with them by the assignor, Louisa Water
Company. Third. The court erred in adjudging that
Fairbanks, Morse & Co. had a lien on the engine and
pump for the sum due it, and in allowing it and Gar-
red, assignee of Rumsey & Co., a lien upon the whole
property of the water company for the payment of
their claims. We will consider the reasons assigned
in the order stated.

Appellant claims that it has a lien on the pipe sold
by it to the waterworks company by reason of a mort-
gage, which was recorded in Lawrence county, Ky.
That part of the mortgage necessary to elucidate the
question to be determined is as follows: "This Inden-
ture made and entered into by and between W. B. Cox
of Pikeville, Ky., party of the first part, and the Miller
Supply Company of Huntington, W. Va., party of the
second part." It, after reciting the indebtedness,

says: "Do hereby mortgage and give a lien on the following described personal property, to-wit: Fourteen hundred and thirty-eight feet of eight-inch spiral pipe; and forty-one hundred and twenty-three feet of four-inch pipe (spiral) and three thousand two hundred and twenty-five feet of six-inch spiral pipe, together with the couplings and the fittings, and known as the material pipes, couplings and fittings purchased of the second party and shipped from Adendroth & Root Mfg. Co. And, further, that the party of the second part has and holds a lien on ten shares of one hundred dollars each in the Crystal Waterworks Company certificate No. 7, which shall be held as security on said debt." It will be observed that the mortgage recites that W. B. Cox, the mortgagor, resided in Pikeville, Pike county, Ky., and, as stated, the mortgage was recorded in Louisa, Lawrence county, Ky., and it is asserted by appellee's counsel that, for this reason, among others, the mortgage did not create a lien upon the property of the waterworks company; that to have obtained a lien by it the mortgage should have been recorded in Pike county, the residence of the mortgagor. The rule is that ordinary personal property is held to have a situs at the residence of the owner, and that a mortgage thereon should be recorded in that county. The cases of Vaughn v. Bell, 8 B. Mon. 447; Coppage v. Johnson, 107 Ky. 620, 21 Ky. Law Rep. 1357, 55 S. W. 424, and Day, etc., v. Mack, Stradler & Co., 69 S. W. 72, 24 Ky. Law Rep. 640, were cases wherein mortgages were executed upon property not permanently located in the counties where the mortgages were executed. In the first two cases the mortgages were executed upon horses, and in the last the mortgage was given upon a portable engine. The property in this case was purchased for the construc-

tion of the water plant, and whether the mortgage
should have been recorded in the place of the actual
situs of the property or in the county of the residence
of the owner we do not decide, for the reason we have
arrived at the conclusion that the mortgage did not
create a lien upon the property for another reason.
The mortgage is void for uncertainty, in that it does
not locate the property as to State, county, or town,
and contains no reference which would supply this
important omission; but the mortgage would indicate
that the property was possibly in Pikeville. Again,
the mortgage covered so many feet of "spiral pipe,"
and there is no other description given of it. There is
nothing in the mortgage by which it could be identified
and distinguished from the pipe of the American
Spiral Pipe Works or the pipe of any other company.
See Am. & Eng. Ency. (2d Ed.) 957, and Pearce, etc.,
v. Hall, 12 Bush, 209. With reference to the second
question the claims of the 14 citizens, we are unable
to see how this question affects appellant, Miller
Supply Company. It did not object to the sale of
the property, and it did not supersede the judg-
ment in that respect; and, if this court should re-
verse the judgment upon this question, it would
only result in the benefit of the purchaser of the
property. The purchaser took the property for a cer-
tain price, with the obligation resting upon him to
furnish these 14 citizens with water at the rates it
furnished water to other citizens until their claims
were paid; and, if this court should adjudge that the
lower court erred in this, it would result alone in
relieving the purchaser from that obligation, and
would not benefit appellant, or the other creditors of
the water company. They will get the benefit of the
purchase price, and no more. For these reasons, we

will not consider the action of the lower court with reference to this matter.

Fairbanks, Morse & Co. sold to the water company the pump engine described, in September, 1905, and it took a contract from the water company, and had it recorded, by which it retained the title to the property until the purchase price was paid. It certainly had a lien upon the property for the payment of its debts, and the court did not err in refusing to allow it and the assignee of Rumsey & Co. to detach the engine and pumps and sell them separately and enforce their liens, but in the interest of all the creditors the court properly directed the sale of the whole plant; but erred in adjuding Fairbanks, Morse & Co. and the assignee of Rumsey & Co. a first lien on the proceeds of all the property. This was inequitable to the other creditors who had no liens. It may have been and probably was true that the pumps and engine would not have brought the full amount of their debts, and, again, the proceeds of the engine and pumps were all that they had a lien upon.

The court should have ascertained the cost of each item that constituted the water plant, and then ascertained what per cent. the cost of the pump sold by Rumsey & Co. and the cost of the engine and pump sold by Fairbanks, Morse & Co. is to the sum total of all the items that went into the water plant, and have given each of them, on their respective claims, that per cent. of the proceeds of the whole water plant, and, if the whole claims are not then satisfied, they should be permitted to present the balance as a general claim and to share with the other creditors pro rata. See section 74, Ky. Stats., 1903.

For this reason, the judgment of the lower court is

reversed, and remanded for further proceedings consistent herewith.