151 F.2d 470 (1945)
In re AMERICAN FUEL & POWER CO. et al.
GREEN et al.
v.
VANSTON BONDHOLDERS PROTECTIVE COMMITTEE et al.
EARLY et al.
v.
SAME.
Nos. 9845, 9846.
Circuit Court of Appeals, Sixth Circuit.
October 9, 1945.
*471 *472 Jay Raymond Levinson, of New York City, and Charles I. Dawson, of Louisville, Ky., for appellants.
Chas. I. Dawson, of Louisville, Ky., H. W. Bowers, of Charleston, W. Va., and Thos. S. Dawson and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., on the brief, for appellants Carl B. Early et al.
Baker, Obermeier, Rosner & Rosenson and Oscar S. Rosner, all of New York City, on the brief, for appellants Louis A. Green and Robert Heilbrunn, known as Green Committee, and Morris Green, a creditor.
George W. Jaynes, of Morristown, Tenn., and Robert J. Bulkley and C. J. Odenweller, Jr., both of Cleveland, Ohio (Milbank, Tweed & Hope, of New York City, LeWright Browning, of Ashland, Ky., Robert J. Bulkley, of Cleveland, Ohio, and Richard B. Hand, of New York City, on the brief), for appellees.
Charles J. Odenweller, Jr., and Frank D. Emerson, both of Cleveland, Ohio, Roger S. Foster, Theodore L. Thau, David Ferber, and Alexander Cohen, all of Philadelphia, Pa., on the brief, for Securities and Exchange Commission.
Before HICKS, SIMONS, and MARTIN, Circuit Judges.
MARTIN, Circuit Judge.
The background of the present appeals need not be elaborated, for the reason that the historical setting has been fully revealed in Columbia Gas & Electric Corporation v. United States, 6 Cir., 151 F.2d 461. A brief resume should suffice.
The Inland Gas Corporation is a subsidiary of its parent holding company, the American Fuel & Power Company, which owned substantially all its stock as well as the controlling interest in other gas utilities, including the Kentucky Fuel Gas Corporation. By actions thought to be inequitable and in violation of the Anti-Trust Laws of the United States, the Columbia Gas & Electric Corporation, a huge natural gas utility, attempted to destroy *473 the threatened competition of the American Fuel & Power Company system. In consequence of this effort, Columbia had acquired, by early December, 1930, nearly forty per cent of the $4,400,000 first mortgage bond issue of the Inland corporation and slightly more than forty per cent of the $4,000,000 first mortgage bond issue of the Kentucky Gas Corporation. Columbia had also acquired more than seventy per cent of the stock of the American Fuel & Power Company and a substantial amount of the debenture bonds of both its subsidiaries, Inland and Kentucky.
Columbia instigated an equity receivership for both Inland and Kentucky; and, later, a foreclosure bill was filed by the trustee for the first mortgage bondholders of Inland. A petition for sequestration of the latter's income for their benefit was filed simultaneously. The district court extended the equity receivership and sequestered the income of Inland, as prayed. On October 15, 1935, a representative committee filed, on behalf of some of the first mortgage bondholders, a petition for the reorganization of the Inland Gas Corporation in the same district court, that for the Eastern District of Kentucky. Shortly thereafter, the district court approved the petition for reorganization.
On February 4, 1939, the district court confirmed the sale of the physical assets of the Kentucky Fuel Gas Corporation to Inland for a consideration of $151,192.48. The Trustee for the debtor, Inland, served in like capacity for the debtor, Kentucky Fuel Gas Corporation.
In the reorganization proceeding pertaining to the debtor, Inland Gas Corporation, a petition was filed on November 3, 1943, by a committee, known as the Van Horn Committee, formed for the protection of the first mortgage bondholders of the debtor. Setting up that the trustee of the debtor corporation had on hand securities and cash in excess of two and a half million dollars, and that the item of cash was amply sufficient for the debtor's working capital, and asserting the first lien of the first mortgage bondholders on the assets, the petition prayed for a partial distribution of fifty per cent, on account of the amount due on each first mortgage bond. The Vanston Bondholders Protective Committee also represents holders of Inland's six-and-a-half per cent first mortgage sinking fund bonds, and, likewise, as evidenced by its position assumed on this appeal, desires a partial distribution to the first mortgage bondholders.
The Trustee responded to the petition, reported the existing situation, and sought the court's determination of the questions presented. Various responses, petitions and objections were filed by interested parties, including second mortgage bondholders, Carl B. Early and others, and the so-called Green Committee, representing note-holders of the American Fuel & Power Company, and holders of certificates of deposit issued by the Lilienthal Committee for that company's notes; and by Morris Green, as creditor in both the Inland Gas Corporation and the Kentucky Fuel Gas Corporation proceedings.
The district court proceeded to a hearing of the application for distribution upon all the pleadings, and upon the record and proceedings previously had in the three bankruptcy causes, relating respectively to the American Fuel & Power Company, the Kentucky Fuel Gas Corporation, and the Inland Gas Corporation. After receiving evidence, hearing arguments, and considering briefs filed by the contending parties, the district court entered an order and judgment which embraced findings of fact and conclusions of law; but no opinion was filed.
These findings of fact were as follows:
"I. No intervening liens were perfected on any of the assets of the Inland Gas Corporation between the time of the appointment of the equity receiver of the said company and the appointment of the Trustee in Bankruptcy of said Company.
"II. The Mortgage or Deed of Trust, dated February 1, 1928, between the Inland Gas Corporation and the Chatham-Phoenix National Bank and Trust Company and James F. McNamara, Trustees, securing the Inland Gas Corporation First Mortgage 6½% Sinking Fund Gold Bonds, Series A, due February 1, 1938, by the terms thereof gave said Bondholders a first lien on the assets of the Inland Gas Corporation described in said Mortgage or Deed of Trust; and in addition thereto a first lien on all after acquired property and the net earnings from the conduct of the business of Inland Gas Corporation.
"III. The cash on hand and securities held by Ben Williamson, Jr., as Trustee of the Inland Gas Corporation, were acquired and accumulated through the operation by the equity receiver of the Inland Gas Corporation and by Ben Williamson, *474 Jr., as Trustee of the Inland Gas Corporation and by his predecessor Trustee, (a) Through the operation of the gas properties which were owned by Inland Gas Corporation prior to the time of the appointment of the equity receiver of said Corporation, all of which property was subject to the first lien of the Mortgage or Deed of Trust hereinabove referred to. (b) Through the operation of the gas properties which were subsequently acquired by the equity receiver or the Trustee in Bankruptcy of said Inland Gas Corporation, pursuant to appropriate orders of this Court, and all of which properties were paid for with funds of the estate which otherwise would have been held for the benefit of the First Mortgage Bondholders of the Inland Gas Corporation. (c) Through the purchase of gas which was not produced from property owned or leased by the Inland Gas Corporation or the equity receiver of said Corporation or the Trustee in Bankruptcy of said Corporation, but which gas was paid for out of the funds which otherwise would have been held, subject to the orders of this Court, for the benefit of said First Mortgage Bondholders of Inland Gas Corporation and which gas was marketed and sold by the equity receiver or Trustee in Bankruptcy of said Corporation by the use of funds, property, and facilities of the estate owned and held by Inland Gas Corporation or the Trustee in Bankruptcy of said Corporation."
Upon these findings of fact, the district court, without citation of authorities, adjudged "the law applicable to the respective issues." This adjudication was in the form of conclusions of law.
The first conclusion stated that the terms and provisions of the mortgage "gave to the holders of the Inland Gas Corporation First Mortgage 6½% Sinking Fund Gold Bonds, Series A, due February 1, 1938, a first lien to secure the payment of said Bonds and the coupons attached thereto and interest thereon on all of the property of the Inland Gas Corporation described therein and on all after acquired property and net earnings of the Inland Gas Corporation, of the equity receiver, and of the Trustee in Bankruptcy of said Corporation."
The court's second conclusion declared that the first mortgage bondholders have a first lien on the properties acquired by the equity receiver and by the trustee in bankruptcy of the Inland Corporation, "which properties were acquired pursuant to appropriate orders of this court and paid for out of the funds which otherwise would have been applicable to the payment of said First Mortgage Bonds and coupons and interest thereon."
The third conclusion of law was thus stated: "The net earnings derived by the Trustee in Bankruptcy of said Inland Gas Corporation and by the equity receiver of said Corporation from the operation of the properties owned by the Inland Gas Corporation, including property acquired subsequently by said receiver and by said Trustee in Bankruptcy and further including the net income from the purchase and sale of gas by the receiver and by said Trustee, is subject to the lien of said Mortgage or Deed of Trust; and that said funds, subject to the orders of this Court, are held by the Trustee in Bankruptcy of said Corporation for the benefit of said holders of the said First Mortgage Bonds and Coupons until said Bonds, coupons, and all interest thereon are paid in full."
The fourth conclusion stated was that the first mortgage bonds and the coupons thereto attached bear simple interest at the rate provided in the mortgage, or deed of trust, from the respective due dates of the bonds and of the coupons until paid.
A further conclusion was thus stated: "Neither the debenture holders nor the general claimants have any right, based either upon subrogation or upon any other ground or basis, to participate in or share with the First Mortgage Bondholders in the distribution of the income or assets of the Inland Gas Corporation until the holders of the said First Mortgage Bonds and coupons attached thereto shall have been paid in full, including any and all accrued and unpaid interest on said coupons and on said bonds."
Restating in part the earlier adjudication, the eighth conclusion of law directed that the Trustee should hold the property, cash and securities, pursuant to the orders of the court, for the payment of the first mortgage bonds and the coupons thereto attached, and interest thereon, until the bonds, coupons and interest shall have been paid in full.
The other three numbered conclusions of law consisted of reservations of judgment on certain questions not here involved; directions for formal procedure; and the taking under advisement of the application *475 of the Van Horn Committee for further distribution to the first mortgage bondholders, "and the probable effect thereof upon ultimately working out a plan of reorganization."
Both the Green Committee, in its protective capacity, and Early and others, as owners of Inland's ten-year seven per cent debentures, seasonably perfected their appeals, and have appropriately stated the points relied upon.
1. The first question presented is: Was the district court correct in holding that the non-negotiated coupons attached to the first mortgage bonds of the Inland Gas Corporation bear simple interest, at the rate provided in the mortgage, from the respective due dates of the coupons until paid?
To answer this question, we must first ascertain from what source we should seek controlling jurisprudence.
The deed of trust, securing the Inland first mortgage bonds, was executed in the State of New York. The bonds and the interest coupons thereto attached were also executed and issued in that state; and were payable there, at the office of the indenture trustee, or, at the option of the bearer, in Illinois. There is no evidence of record that any bondholder demanded payment in Illinois. Nor do the proofs of claim filed by the bondholders indicate that any coupons have been detached from the bonds or negotiated to third parties.
Neither the bonds nor the coupons provide for the payment of interest on the coupons after maturity and default in payment; but the trust indenture securing them does provide for the payment of interest on defaulted coupons, as well as bonds, from their respective due dates until paid, at the same interest rate as that applicable to the bonds before maturity.
New York is the state where the contracts were made and is also the primary place of performance. In all the circumstances, it would seem, therefore, that we must look to the law of New York for decisive guidance. The issue was tried and determined in the district court upon this hypothesis, though the question is not free from doubt.
The rule long recognized was thus stated in Scudder v. Union Nat. Bank, 91 U.S. 406, 412, 413, 23 L.Ed. 245: "Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought." The Supreme Court in Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 453, 9 S.Ct. 469, 476, 32 L.Ed. 788, said that it had "often affirmed and acted on the general rule, that contracts are to be governed, as to their nature, their validity, and their interpretation, by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view."
The opinion in Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 497, 61 S.Ct. 1020, 85 L.Ed. 1477, announced that, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the federal courts, when deciding questions of conflict of laws, in diversity of citizenship cases, must follow the rules prevailing in the states in which they sit.[1]
But, in D'Oench, Duhme & Co. v. F. D. I. C., 315 U.S. 447, 456, 62 S.Ct. 676, 86 L.Ed. 956, the Supreme Court expressly pretermitted the question of whether the rule of the Klaxon case applies where federal jurisdiction is not based on diversity of citizenship. The instant case rests on no such jurisdiction, but upon the jurisdiction of the federal district court sitting in bankruptcy, in a reorganization proceeding, in the State of Kentucky.
*476 In Huddleston v. Dwyer, 322 U.S. 232, 236, 237, 64 S.Ct. 1015, 88 L.Ed. 1246, the duty of a federal appellate court, as well as that of a United States District Court, to ascertain and apply controlling state law was emphasized to the point that the judgment of the circuit court of appeals was reversed, and the cause remanded for reconsideration, in the light of decisions of the Supreme Court of Oklahoma, which had re-examined its earlier decisions, including some upon which the circuit court of appeals had relied in deciding the case. In Meredith v. Winter Haven, 320 U.S. 228, 237, 238, 64 S.Ct. 7, 12, 88 L.Ed. 9, the Chief Justice declared that the Supreme Court "has not hesitated to decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain." The opinion stated further that, even though the Supreme Court's decisions "could not finally settle the questions of state law involved, they did adjudicate the rights of the parties with the aid of such light as was afforded by the materials for decision at hand, and in accordance with the applicable principles for determining state law."
The Court of Appeals of Kentucky has declared that "it may be stated without exception that, if under the lex loci contractus the contract for any reason is void, it will be invalid everywhere, and will not be enforced by the lex fori, although it would be valid if executed in that jurisdiction." Moody v. Barker, 188 Ky. 401, 403, 222 S.W. 89, 90. Cf. Fry Bros. v. Theobold, 205 Ky. 146, 148, 149, 265 S.W. 498; Cooper's Adm'r v. Lebus' Adm'rs, 262 Ky. 245, 250, 90 S.W.2d 33. So, in any event, if the covenant to pay interest on interest is invalid under New York law, it would seem that a Kentucky state court would not enforce the covenant and that, therefore, a federal district court sitting in Kentucky should not enforce it.
With these principles in mind, we approach the difficult task of attempting, as in duty bound, to evolve from the confusing status of New York law the rule of decision to be derived from the authorities in that state upon the issue presented for determination.
Though the district judge filed no opinion, it appears from his colloquy with counsel, contained in the record, that he placed chief dependence upon an opinion by District Judge Patterson in American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.S.D.N.Y., 26 F. Supp. 954, for his conclusion that the unnegotiated coupons attached to the Inland first mortgage bonds carry interest from their maturity dates until paid. The opinion of this distinguished New York federal jurist, then a United States District Judge for the Southern District of New York and later promoted to the Circuit Court of Appeals for the Second Circuit, is entitled to high respect, especially upon an interpretation of New York law.
But it must be observed that the authority of Judge Patterson's opinion is weakened, because of its seeming conflict with the opinions on the same subject matter of two other distinguished federal jurists, namely: Judge Mack of the Second Circuit Court of Appeals, sitting as district judge in American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.S.D.N.Y., 11 F.Supp. 418; and Judge Lurton, a former member of this court and later an associate Justice of the Supreme Court, who wrote the opinion in Re Columbus, S. & H. R. Co. Appeals, 6 Cir., 109 F. 177.
Judge Patterson held that, under New York law, the provision of a trust indenture for seven per cent interest on interest coupons, after maturity, was enforceable as not in violation of the public policy of the State of New York. He drew a distinction between compounding interest by adding accumulated interest to the principal at periodic intervals and an agreement to pay simple interest on overdue instalments of interest; and concluded that statements in certain of the New York opinions, to the effect that an agreement to pay "interest on interest" [26 F.Supp. 955] is invalid, were made in contexts where the agreements under discussion were agreements to pay compound interest. He distinguished Williamsburgh Savings Bank v. Town of Solon, 136 N.Y. 465, 32 N.E. 1058, upon the ground that, in that case, there was no promise by the borrower to pay interest on overdue coupons, and that the Court of Appeals of New York had held merely that the law would not add such a promise, or such a consequence, except where the coupon had been detached and was held by one who *477 did not hold the bond. He declared, further, that it appears that the New York courts have not rendered a decision on the validity of a covenant by a borrowing corporation to pay simple interest on overdue coupons. He regarded it as significant that, "by the impressive weight of authority in other jurisdictions overdue coupons are held to draw interest as matter of law, without the assistance of express agreement to that effect by the debtor." He added that it should be borne in mind that, in general, parties may make what contracts they please, and that the law enforces a contract as written, unless contrary to statute, or to settled public policy. American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C., 26 F.Supp. 954.
Circuit Judge Mack, sitting previously as a district judge in the same case, had reached a contrary conclusion in American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., supra, 11 F.Supp. 418, 419, 420, as to the validity and effect of the same covenant construed by Judge Patterson. In his opinion, Judge Mack asserted: "But, under New York law, the indenture provision for interest after maturity on the other two classes of interest coupons is unenforceable, as violative of the public policy of that state. Williamsburgh Savings Bank v. Town of Solon, 1893, 136 N.Y. 465, 32 N.E. 1058; Bailey v. County of Buchanan, 1889, 115 N.Y. 297, 22 N.E. 155, 6 L.R.A. 562; Young v. Hill, 1876, 67 N.Y. 162, 23 Am.Rep. 99." Despite his expressed individual view that state law ought to control contractual obligations made and payable in the state, especially in cases resting on diversity of citizenship, Judge Mack was constrained by the doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, to apply federal common law then thought to exist; and, therefore, held that the holders of the coupons were entitled to interest on them from maturity.
In the interim between the decision of Judge Mack and that of Judge Patterson, the opinion in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, was promulgated by the Supreme Court; and, consequently, Judge Patterson was called upon to decide whether further payments of interest on the delinquent coupons should be made. It is obvious that, had Judge Mack's opinion been rendered after the announcement of the revolutionary doctrine of Erie R. Co. v. Tompkins, he would have applied the New York law and disallowed interest on the past-due coupons.
In Re Columbus, S. & H. R. Co. Appeals, supra, 109 F. 177, 193 (6 Cir.) Judge Luron said: "The decree of the circuit court allowed interest upon the undetached matured coupons. This is excepted to upon the ground that the principal and interest is made payable in New York. The doctrine of the New York courts seems to be that interest upon interest is not allowed under the law of that state, but that an exception exists growing out of the character and purpose of interest coupons upon commercial obligations `when they become separate and independent instruments.' In Williamsburgh Sav. Bank v. Town of Solon, 136 N.Y. 465, 32 N.E. 1058 (decided in 1893), it was held that, until they do, this exception from the general rule has no application." Bailey v. Buckanan County, 115 N.Y. 297, 22 N.E. 155, 6 L.R.A. 562, was also cited.
Judge Clancy of the Southern District of New York, in Transbel Inv. Co. v. Roth, 36 F.Supp. 396, 398, 399, pointed out that the instructions of Chancellor Kent to the master in chancery, in State of Connecticut v. Jackson, 1 Johns.Ch., N.Y., 13, 7 Am.Dec. 471, forbade the imposition of simple interest on interest, and also that the same eminent jurist, in Van Benschooten v. Lawson, 6 Johns.Ch., N.Y., 313, 10 Am. Dec. 333, had under consideration the imposition of interest on interest, although it was designated "compound interest." Judge Clancy said: "It appears though that the rule has been consistently stated as a public policy, that interest on interest has been described as compound interest because it differs from compound interest not in character or quality but only in quantity and that no case in New York has whittled the policy down one jot or tittle." He thought, however, that Williamsburgh Savings Bank v. Town of Solon, supra, pertaining to the payment of interest on coupons of bonds of a large issue generally distributed, "constitutes an exception in the sense that the policy does not there apply." From our reading of the Williamsburgh case, we cannot concur in this differentiation; but regard the reasoning of Judge Clancy's opinion as otherwise sound.
The Williamsburgh case presented the question whether interest could be collected on past due interest coupons, where there was no covenant in the trust indenture securing the bonds, or on the face of either *478 the bonds or the coupons, that interest would be payable on the coupons after maturity. The Court of Appeals of New York adhered to the doctrine of Bailey v. Buchanan County, 115 N.Y. 297, 22 N.E. 155, 6 L.R.A. 562, and disallowed interest on the coupons upon the principle that they cannot be considered independent negotiable instruments entitled to draw interest from maturity, unless the coupons have been detached from the bonds and separately negotiated. Unless so detached and negotiated, the coupons were considered as falling within the rule pertaining to ordinary unpaid interest instalments.
Considering the New York decisions in their historical setting and relationship, it would seem that, in New York, a covenant made prior to the accrual of interest, to pay interest on interest, is contrary to the public policy of the state and is, therefore, unenforceable. Though the opinions usually speak of "compound interest," no intentional distinction between "compound interest" in a technical sense and simple "interest upon interest" is apparent. The bar against the allowance of interest upon interest, unless agreed upon after the interest has become due and payable, seems to rest upon disapproval of a hard and oppressive exaction tending to usury, without reference to difference in degree. Indeed, some of the New York decisions, listed below, dealt with agreements to pay simple interest upon interest. In our study, we have considered the New York cases chronologically: State of Connecticut v. Jackson, 1 Johns.Ch. 13, 7 Am.Dec. 471; Van Benschooten v. Lawson, 6 Johns.Ch. 313, 10 Am.Dec. 333; Mowry v. Bishop, 5 Paige 98; Toll v. Hiller, 11 Paige 228; Forman v. Forman, 17 How.Prac. 255; Stewart v. Petree, 55 N.Y. 621; Young v. Hill, 67 N.Y. 162, 23 Am.Rep. 99; Bailey v. Buchanan County, supra; Williamsburgh Savings Bank v. Town of Solon, supra.
Two statements of Mr. Justice Cardozo are important. In Continental Securities Co. v. New York Central & H. Railroad Co., 217 N.Y. 119, 125, 111 N.E. 484, 486, the brilliant New York jurist declared: "It makes no difference that the promise to pay interest is represented by coupons. Until detached and separately negotiated, a coupon is merely an incident of the bond without greater force [than] any other promise for the payment of interest. Williamsburgh Savings Bank v. Town of Solon, 136 N.Y. 465, 481, 32 N.E. 1058." He asserted, in Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 510, 114 N.E. 846, 847, 3 A.L.R. 287: "The charge of compound interest was correctly disallowed. The rule is settled that a promise to pay interest upon interest is void if made at a time before simple interest has accrued. Young v. Hill, 67 N.Y. 162, 23 Am.Rep. 99. The provision in the contract that interest shall be `charged on the account current * * * at the rate of 6 per cent. per annum,' must, therefore, mean simple interest. Any other promise, made at the outset of the dealings, would be invalid." These expressions of one of New York's greatest judges fix our conviction that the New York law forbids the allowance of interest on the defaulted coupons in the instant case.
We find nothing to the contrary in Union Estates Co. v. Adlon Construction Co., 221 N.Y. 183, 116 N.E. 984, 12 A.L.R. 363. No agreement to pay interest upon interest was involved in that case. The holding there was that an agreement by a corporation to pay interest in excess of the legal rate is not usurious under New York law; and that, in the absence of an interdicting statute, an agreement to pay interest upon a loan from its date until its payment, at one rate before and a different rate after its maturity, is an agreement to pay interest and not a penalty as to the latter rate. The case is not analogous to that at bar.
In pursuance of the duty resting upon us, we have, in conformity with West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, and Fidelity Union Trust Co., v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, looked to the opinions of the intermediate courts of New York, to all other data supplied by counsel for the contending parties in the form of references to masters' reports and orders of confirmation of the same, and to all available sources, for the determination of the New York law upon the point in issue. The most that has been developed from such investigation is conflict. We have found no guidance to decision save in the opinions of the highest court of New York. Upon our rounded view of the opinions of that tribunal, we have concluded that the district court erred in holding that the non-negotiated coupons attached to the *479 first mortgage bonds of the Inland Gas Corporation bear simple interest, at the rate provided in the mortgage, from the respective due dates of the coupons until paid.
2. Can the rejected claim of Columbia Gas & Electric Corporation to ownership of more than a third of the first mortgage bonds issued by Inland Gas Corporation (which claim was rejected as invalid because based on or arising out of illegal transactions and, therefore, not provable or allowable in a bankruptcy reorganization) be deemed valid as an asset of the Trustee of Inland for the benefit of all creditors, including debenture holders, so as to permit them to share in the security of the first mortgage?
The district court answered in the negative; and we think the answer is correct.
It has now been held in the companion case, Columbia Gas & Electric Corporation v. United States, supra, that in deference to the principle announced in Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, the claim of Columbia Gas & Electric Corporation, based upon its ownership of mortgage bonds issued by Inland, is not to be rejected but is to be subordinated to the claims of other creditors. While in view of the liabilities of Inland in relation to its assets, the distinction between rejection and subordination may be purely academic, it becomes necessary to consider the foregoing contention, in view of possible further insistence upon it, notwithstanding the amendment to the Columbia decree, and in consideration of the possibility that our amendment may, upon certiorari, be set aside, and the decree therein, rejecting Columbia's claim, restored.
The argument of appellants lacks clarity, and is difficult to follow. From the rejection by the district court of any and all claims of Columbia in these reorganization proceedings, appellants take the position that the rejected claim of Columbia passes to the Trustee of Inland, for the benefit of all creditors.
They contend that a fraudulent mortgage, or preferential lien, voided in bankruptcy proceedings is held by the trustee for the benefit of all creditors, both antecedent and subsequent; and that, "where there are other secured creditors, the voided obligation or transfer will be preserved for the benefit of all creditors, both secured and unsecured, who are to share equally as a result of the avoidance of the claim." The cases which they cite do not establish any such proposition as remotely applicable to the case at bar. First National Bank v. Staake, 202 U.S. 141, 26 S.Ct. 580, 50 L.Ed. 967; In re Graves' Estate, D.C.W.D. Ky., 27 F.Supp. 717; Egyptian Supply Co. v. Boyd, 6 Cir., 117 F.2d 608; Campbell v. Calcasieu Nat. Bank, 5 Cir., 12 F.2d 981; Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; L. A. Becker Co. v. Gill, 8 Cir., 206 F. 36; Globe Bank & Trust Co. of Paducah, Kentucky v. Martin, 236 U.S. 288, 35 S.Ct. 377, 59 L.Ed. 583; Campbell v. Dalbey, 5 Cir., 23 F.2d 229; Oliver v. Brennan, D.C., 292 F. 197; In re Hurst, 4 Cir., 194 F. 830; In re Duggan, 5 Cir. 183 F. 405. These authorities are so far afield from the situation confronted here that to discuss and differentiate them would serve no useful purpose.
Appellants seek to buttress their position upon Sections 67 and 70 of the Bankruptcy Act, 11 U.S.C.A. §§ 107, 110; and contend that interpretative decisions hold that title to property recovered by a trustee in bankruptcy, where a claim has been rejected for a violation of law or a lien has been annulled, passes to the trustee in bankruptcy for the benefit of all creditors. Prudence Realization Corporation v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293; Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A. L.R. 1198; Campbell v. Dalbey, supra; Fazackerly v. E. Kahn's Sons Co., 5 Cir., 75 F.2d 110; Egyptian Supply Co. v. Boyd, supra; In re L. H. Lewis Co., 5 Cir., 62 F.2d 353; In re New York Economical Printing Co., 2 Cir., 110 F. 514. None of these authorities is in point; and we agree heartily with the comment of the district judge, made during colloquy with counsel, that it is impossible to find anything in Prudence Realization Corporation v. Geist, supra, heavily emphasized by appellants, that has any application to the question presented.
The rejected lien of Columbia was a mortgage lien created by contract, and not a lien obtained by attachment, judgment, levy, or other legal or equitable process, or proceedings, pursuant to Section 67.
Section 70 of the Bankruptcy Act gives the trustee the right to attack a transfer made or an obligation incurred by a debtor adjudged bankrupt under the Act, if any one creditor may make such attack; and *480 the recovery of the property transferred, or the cancellation of the obligation incurred, will be for the benefit of all creditors. That which passes to the trustee under Section 70 is the right of the creditor to attack the transfer or obligation. It does not follow, from this, that the trustee would, from the right granted by the Section, be subrogated to participate, in lieu of Columbia, in the security of the mortgage, upon adjudication of the invalidity of the bonds held by Columbia. If any right of subrogation exists here at all, it must be derived from general doctrine and not from the Bankruptcy Act. Certainly, there is nothing in Section 70 to indicate that the bonded indebtedness of the debtor to Columbia must or can be kept alive for the benefit of the creditors of the debtor, after cancellation as to Columbia.
Nor does there seem to be any justifiable basis for application of the "doctrine of substitution," or subrogation, for the benefit of the general creditors or debenture holders in the instant case. So far as the record shows, the bondholders who yet hold valid first mortgage bonds have done nothing to the detriment of the holders of junior liens, or of general creditors. See Martin v. Commercial Nat. Bank of Macon, Ga., 5 Cir., 228 F. 651, 654. Appellants are claiming the right to subrogation without any showing that they actually have sustained or will sustain loss from the rejection of Columbia's claim. The assets of the bankruptcy estate have been neither increased nor diminished by that rejection. The status quo of the assets of the debtor remains unchanged. It is true that the liabilities of the estate have been reduced, but not at the expense of general creditors.
Where a part of a secured debt is valid and a part invalid, no good reason appears for permitting other creditors to share in the security. Indeed, the contrary has been held in cases where the equities of the mortgagees appeared weaker than do those of the holders of the valid Inland first mortgage bonds. See Edgar v. Ames, 8 Cir., 255 F. 835; Bell & Coggeshall Co. v. Kentucky Glass Works Co., 106 Ky. 7, 50 S.W. 2, 1092, 51 S.W. 180. See also In re McDermott, 7 Cir., 115 F.2d 582; Cass Bank & Trust Co. v. Sheehan, 8 Cir., 97 F.2d 935. Cf. City National Bank of Greenville v. Bruce, 4 Cir., 109 F. 69.
The contention of appellants that the decision of the district court gives an added security not within the terms of the trust indenture to the first mortgage bondholders is unsound, for it rests necessarily upon an erroneous assumption that the bondholders were in the position of co-owners. The mortgage covers the entire parcel of mortgaged property and each bond is secured ratably by the entire mortgaged property.
There is no power vested in a bankruptcy court to order preferential payments because of considerations which might appeal to the Referee or to the Judge as falling within general principles of equity jurisprudence. The plain mandate of law cannot be so set aside. While the bankruptcy court is a court of equity it is restricted in its application of equitable principles to the jurisdiction conferred upon it by the provisions of the National Bankruptcy Act, reasonably construed. See statement in Southern Bell Telephone & Telegraph Co. v. Caldwell, 8 Cir., 67 F.2d 802. We find no justification here present for applying the doctrine of subrogation.
3. The last issues presented for decision are whether, as was held by the district court, the lien of the first mortgage of Inland Gas Corporation embraces (1) income earned before the bill to foreclose the mortgage was filed on April 15, 1931; (2) cash, receivables and supplies on hand at the time of the appointment of the Equity Receiver on December 2, 1930; and (3) after acquired property and the income from after acquired property. The appellants challenge the correctness of the judgment of the district court in these three particulars. They contend that, under the reservation clause of the trust indenture securing the first mortgage bonds, cash on hand, receivables and other personal property assets generally describable as supplies were free and clear from the lien of the mortgage until such time as default should be declared, and that inasmuch as default was not declared until some four months after the Equity Receiver had taken possession, the mortgage bondholders are not entitled to a lien on these excepted assets.
The doctrine of Benedict v. Ratner, 268 U.S. 353, 364, 45 S.Ct. 566, 69 L.Ed. 991, is said to support their argument that reservation of full control by the mortgagor of the excepted assets, until default *481 is declared, prevented the effective creation of a lien.
It seems well settled that the validity and effect of a mortgage lien should be determined by the law of the state in which the property upon which the lien is asserted is located. See Rubenstein v. Nourse, 8 Cir., 70 F.2d 482, 484, and cases there cited; Manufacturers Bank & Trust Co. v. Lauchli, 8 Cir., 118 F.2d 607; Humphrey v. Tatman, 198 U.S. 91, 25 S.Ct. 567, 49 L.Ed. 956; Holt v. Crucible Steel Co., 224 U.S. 262, 32 S.Ct. 414, 56 L.Ed. 756. The opinion in Marshall v. New York, 254 U.S. 380, 385, 41 S.Ct. 143, 145, 68 L.Ed. 315, states that "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." We must therefore look to Kentucky for the controlling law.
It would appear that in Kentucky, no lien in favor of third parties having come into existence prior to the time the mortgagee sought to subject to the mortgage accrued rents, issues and profits, the mortgage constituted a first lien on the rents, issues and profits accrued or on hand with the mortgagor at the time of the institution of the foreclosure proceeding and the entry of the order of sequestration on April 15, 1931. Watt's Adm'r v. Smith, 250 Ky. 617, 630, 631, 63 S.W.2d 796, 91 A.L.R. 1206.
In Kentucky, it has been declared that the entire tenor and effect of an instrument pledging rents, issues and profits in addition to the real estate mortgaged is that such a pledge is deemed secondary security, "with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action looking toward possession and subjection." Such definite action must be taken in some lawful manner, which ordinarily, even without a specific provision authorizing it, is by asking the court to have a receiver take control for the pledgee's benefit. Where there is a pledge of rents, issues and profits, "the mortgage or lien will be construed to cover those things on hand when they are taken into possession by the mortgagee or the receiver"; but of course "up until the time the mortgagee has chosen to exercise his right to perfect his lien on the rents, issues, and profits, any intervening lien acquired upon them must take precedence and be held superior." Southern Trust Co. v. First-City Bank, etc., 259 Ky. 151, 154, 155, 82 S.W.2d 205, 207, 208.
The most recent pertinent opinion of the Court of Appeals of Kentucky is Title Ins. & Trust Co. v. Clark, 271 Ky. 22, 29, 111 S.W.2d 409. In that case, Clark had mortgaged real estate and the rents, issues and profits arising from the mortgaged property. Subsequently, he executed an assignment of all his property, including the mortgaged real estate, for the benefit of creditors. Taking charge of the mortgaged real estate, the assignee collected the rents, issues and profits therefrom. Thereafter, the mortgagee commenced foreclosure proceedings and procured the appointment of a receiver for the mortgaged property. It was held that the accrued rents, issues and profits were subject to the lien of the mortgage. The lien of the mortgage was regarded as "first and superior to any lien or rights in equity or otherwise, that the general creditors may have on account of the assignment."
Insofar as title and substantive rights are affected, no material difference appears between the position of an assignee under a deed of assignment for the benefit of creditors and an equity receiver of the property and assets of a corporation. See Banco Kentucky Co.'s Receiver v. National Bank of Kentucky's Receiver, 281 Ky. 784, 823, 825, 137 S.W.2d 357.
The appointment of a receiver does not change title or impose any lien upon the property in possession of the receiver. As was said by Judge Lurton in Central Appalachian Co. v. Buchanan, 6 Cir., 90 F. 454, 458: "He [the receiver] is a mere custodian of the court, holding and protecting the property to await its ultimate disposition by the court, according as the right might appear. No right of priority is ordinarily fixed by such appointment. It cuts off the right to acquire liens, but imposes none by virtue of the step alone." See also Quincy, etc., Railroad Co. v. Humphreys, 145 U.S. 82, 12 S.Ct. 787, 36 L.Ed. 632; Haehnlen v. Drayton, 3 Cir., 192 F. 300; Southern Ry. Co. v. United States Fidelity & Guaranty Co., 5 Cir., 87 F.2d 118; Thomas v. Cincinnati, N. O. & T. P. Ry. Co., 6 Cir., 91 F. 202, 204 (opinion by Circuit Judge Taft, later Chief Justice of the United States).
*482 In our view, the appointment of the equity receiver on December 2, 1930, did not foreclose the mortgagee from taking such action, after that date, as was necessary to subject the accrued rents, issues and profits to the lien of the mortgage. Nor did the appointment of the receiver have the effect of creating an intervening lien upon the current assets of the mortgagor. The institution of foreclosure proceedings by the mortgagee on April 15, 1931, following the appointment of the receiver, who had taken possession of the assets several months earlier, and the entry of the sequestration order effectuated perfection of the inchoate lien of the mortgagee upon all rents, issues and profits accrued or on hand at the time; and the lien, being so perfected, related back to the date of the execution of the mortgage. Such interpretation does not contravene the accepted rule that, after the appointment of a receiver, creditors possessing no lien may not acquire one and thereby obtain a preference. See Thompson v. Fairbanks, 196 U.S. 516, 524, 525, 25 S.Ct. 306, 49 L.Ed. 577; Humphrey v. Tatman, 198 U.S. 91, 25 S.Ct. 567, 49 L.Ed. 956; Fisher v. Zollinger, 6 Cir., 149 F. 54.
When mortgage assets are brought into the custody of a court of equity, for distribution, the right of the mortgagee to the rents, issues and profits therefrom, both as to those accrued and those subsequently accruing, is superior to the claims of unsecured creditors, or of those who have not perfected liens prior to the institution of the receivership. These conclusions, we think, are well supported by authority. Watt's Adm'r v. Smith, 250 Ky. 617, 63 S.W.2d 796, 91 A.L.R. 1206; Title Insurance & Trust Co. v. Clark, 271 Ky. 22, 111 S.W.2d 409; In re Wakey, 7 Cir., 50 F.2d 869, 872, 75 A.L.R. 1521. Judge Evans said, in the last cited case: "Assuming as we do that the trustee in bankruptcy occupies the same position as a receiver appointed in a suit in equity, where no directions appear as to the disposition of the rents and profits, there seems no escape from the conclusion that payments out of such funds should be made to the lienholders in the order of their priority." In Atlantic Trust Co. v. Dana, 8 Cir., 128 F. 209, 230, Mr. Justice Van Devanter, then Circuit Judge, said that in the circumstances of the case the reconstruction, enlargement, or permanent improvement of mortgaged property by a court's receiver "does not any more displace or postpone the prior mortgage lien than would the like act of the mortgagor in the absence of a receivership."
We think the district court correctly adjudged the priority of the lien of the Inland first mortgage for the reasons heretofore stated.
There remains for consideration the question whether the lien of the Inland Gas Corporation's first mortgage covers after acquired property and the income from after acquired property. In our judgment the district court correctly decided that it does. The rule in Kentucky is thus stated in United States Cast Iron Pipe & Foundry Co. v. Henry Vogt M. Co., 182 Ky. 473, 482, 206 S.W. 806, 809: "The rule which applies to property described in a mortgage which the mortgagor did not then have, but, which is to be afterward acquired by him, is that the mortgage does not create a lien upon such property, except as between the parties to it, when it comes into existence, except in the instance of the increase of a female animal covered by a mortgage and where property is acquired by a corporation when undertaking to exercise powers which are conferred upon it by its charter. [Citing cases.] * * * In the case of public service corporations, as railroad companies and water companies, property acquired after the execution of a mortgage which is sufficiently descriptive to embrace the after-acquired property, and which composes an integral, indispensable, or necessary part of its machinery or fixtures, to perform things, which it is empowered by its articles of incorporation to do, are covered by the lien of the mortgage, not only as between the mortgagor and mortgagee, but as between the mortgagee and subsequent purchasers and claimants of liens. [Citing cases.]"
See also Georgetown Water Co. v. Fidelity Trust & Safety Vault Co., 117 Ky. 325, 341, 342, 78 S.W. 113; Cheatham v. Tennell's Assignee, 170 Ky. 429, 432, 186 S.W. 128, L.R.A.1917C, 1; Moulder-Holcomb Co. v. Glasgow Cooperage Co., 173 Ky. 519, 524, 191 S.W. 275; Northwestern Mut. Life Insurance Co. v. Stofer, 242 Ky. 144, 146, 45 S.W.2d 1025.
The mortgage debtor, being a public utility corporation, falls within the exception from the general rule as declared in the Kentucky cases cited supra. The property *483 acquired from the use of mortgaged funds on hand at the date of the receivership is covered by the lien of the mortgage. By the express provisions of the indenture securing the mortgage bonds, title was conveyed to the indenture trustee to after acquired property and to all rents, issues, privileges, revenues and income, present and future, of such property. All leases and property acquired in fee were purchased from earnings of the property subject to the mortgage lien. Such earnings were subject to the mortgage lien under the rents, issues and profits clause.
We find nothing in the authorities cited by appellants on this phase of the case to gainsay the conclusions reached by the district judge. The opinion in Nash v. Onondaga Hotel Corporation, 2 Cir., 140 F.2d 209, turned upon the construction of the law of New York; and the opinion of District Judge Nevin in the National Cottonseed Products Corporation reorganization case, D.C.W.D.Tenn., 34 F.Supp. 438, relating to an after acquired property clause in a mortgage, turned on the application of federal law. We find the position of appellants is not supported by Miller Supply Co. v. Louisa Water Co.'s Assignee, 128 Ky. 476, 108 S.W. 870.
The judgment of the district court, from which these appeals were taken, is affirmed in all respects which we have indicated, and is reversed with respect to the allowance of interest upon the interest coupons, as heretofore indicated; and the cause is remanded to the district court for further proceedings in conformity with this opinion.
NOTES
[1] It seems clear that, under Kentucky law, simple interest is allowable upon non-negotiated coupons from their respective due dates until paid. See McWilliams v. Northwestern Mut. Life Ins. Co., 285 Ky. 192, 197, 147 S.W.2d 79, and cases there cited. See also Pensacola & A. R. Co. v. Hilton's Trustee, 147 Ky. 553, 556, 144 S.W. 1077. Both the Illinois rule and the federal rule are to the same effect. Bowman v. Neeley, 137 Ill. 443, 27 N.E. 758, same case, 151 Ill. 37, 37 N.E. 840; Abbott v. Stone, 172 Ill. 634, 50 N.E. 328, 64 Am.St.Rep. 60; Town of Genoa v. Woodruff, 92 U.S. 502, 23 L.Ed. 586. See also federal authorities cited in opinion of Judge Mack in American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 11 F.Supp. 418, 420.